S. S. THOMPSON & COMPANY, APPELLANT, v. THE
COUNTY OF ATLANTIC, RESPONDENT.

Argued October 16, 1929—Decided February 3, 1930.

For the appellant, *Quinn, Parsons & Doremus.*

For the respondent, *Enoch A. Higbee.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was an action at law in the
Supreme Court for damages. The defendant denied lia-
bility and the case was tried before Circuit Court Judge Sooy
and a jury. The trial court struck out the first and third
counts of the complaint and ordered a nonsuit as to the
second and fourth counts, and directed that a general verdict
be entered in favor of the plaintiff and against the defendant

upon the fifth count in the sum of $3,035.08. Judgment was thereafter duly entered for the directed verdict, with costs. The plaintiff appeals to this court from the whole of the judgment entered in the cause in the court below. Undoubtedly it did not intend to appeal from the directed verdict, but on the ground that it was entitled to recover a larger sum; and assigns as grounds of appeal (1) the granting of the motion to nonsuit on the second and fourth counts of the complaint, and (2) the striking of the first and third counts.

The plaintiff-appellant entered into a contract with the county of Atlantic for the building of a bridge spanning Inside Thorofare in Atlantic City, known as Albany avenue bridge, taking down the entire superstructure of the then present bridge, with certain piers, supports, &c.; and agreed to complete the entire work on or before the expiration of two hundred working days after the approval of working contract and bond, as provided in the specifications. The contract was made and dated December 30th, 1926, and required the work to be begun within ten days thereafter. Certain specifications of forms were submitted to prospective bidders, including the plaintiff, who secured the award of contract for doing the work. Among the specifications for bids were the following:

"Prospective bidders are hereby directed to carefully read and consider the plans and specifications and to visit the site of the work so that they may thoroughly familiarize themselves with the conditions, particularly the difficulties, existing at the site; no consideration will be given to any claim that a bid was made without full comprehension of the conditions to be encountered.

"The contractor must assume all risks and responsibilities for accidents and damage of any kind whatsoever during construction of the work, and he must sufficiently barricade the work at all times, with proper lights at night, until final completion of it. Any loss or damage, arising from unforeseen obstructions or difficulties encountered in the prosecution of the work, must be sustained by the contractor."

And in the form of a bidder's blank submitted along with the specifications, the bidder, including the plaintiff, was required to certify, and plaintiff-appellant did certify that:

"Having carefully examined the specifications and all plans covering the proposed reconstruction of the bridge spanning Inside Thorofare in Atlantic City, known as the Albany avenue bridge, upon which bids have been invited by advertisement to be submitted to you on December 15th, 1926, and having carefully studied the site of the work to ascertain the conditions, particularly the difficulties, existing there, the undersigned will provide all necessary machinery, tools, apparatus and other means of construction, will do all work and furnish all materials required by the plans and specifications and in the manner shown by the plans and in accordance with the instructions of your engineer."

It will be observed that in the first specification for bids above set out a prospective bidder was directed to read carefully and consider the plans and specifications and *visit* the site of the work, so as to be thoroughly familiar with the conditions, particularly the *difficulties* existing at the site; and the second, that any loss or damage arising from unforeseen obstructions or *difficulty encountered* in the prosecution of the work must be *sustained by the contractor;* and in the third, or form of bid submitted by the plaintiff-appellant, it was stated that having carefully examined the specifications and plans, and having carefully studied the site of the work to ascertain the conditions, particularly *the difficulties existing there,* the bidder offered to enter into the contract. The truth is that the city of Atlantic City at that time had and maintained at the *locus in quo* a large pipe or water main, which was being removed. If anything were wanting to show that the plaintiff-appellant knew exactly what was being done, it is supplied in the testimony of Mr. Thompson, president of the S. S. Thompson Company, the plaintiff-appellant. He was examined as follows:

"*Q.* When you made the examination before this bid, will you tell us what you found? *A.* Well, practically two or

three weeks before we made the bid, before the time for the bids to be received, I visited the site, went over the bridge and looked around; went down and saw what is known as the east side; saw some men with two machines, operating divers, etc.; removing the pipe line; saw the rest of the bridge *in toto,* as was; asked some questions. *Q.* Did you obtain information as to what those men were doing? *A.* Yes, sir. *Q.* And as the result of the information that you obtained, what did you find out about this pipe line? *A.* Well, I asked them how long they would be before the pipe line would be out of there. I asked—— the man I saw was the foreman on one of the scows. *Q.* And what information did you receive as to the length of time before the pipe line would be out? *A.* About a month." And on cross-examination: "*Q.* You visited the *locus in quo,* or scene of this bridge, before preparing your bid; did you not? *A.* Yes, sir. *Q.* And you saw men there removing the water pipe? *A.* Yes, sir. *Q.* You therefore knew the water pipe was there; didn't you? *A.* Yes, sir. *Q.* You knew at that time that the men removing that water pipe were not employes of Atlantic City; didn't you? *A.* I didn't ask them that. *Q.* Did you make any inquiry as to who they were or who the water pipe belonged to, or anything of that kind? *A.* No, sir. I assumed that the water pipe belonged to Atlantic City. *Q.* And you afterwards found that that was correct; did you not? *A.* Yes, sir; as far as I know; I assumed—— I assume it is yet."

Cross-examining counsel says that the question: "You knew at that time that the men removing that water pipe were not employes of Atlantic City; didn't you?" is incorrectly set forth, and it should be "were employes of Atlantic City." The word "not" appears in the printed case. But it practically makes no difference which is right and which wrong. Concededly, Atlantic City owned the pipe line and *it makes no difference whether it was removing it itself* or through an independent contractor. The fact is that either was a third party, and was not connected with the county of Atlantic.

The plaintiff-appellant argues the cause under four heads: (1) The county was obligated to furnish the site within ten days; (2) the act of a third party may have caused default of county to furnish site; but does not release the county; (3) delay caused contractor not contemplated by any provision in contract; (4) by proceeding with work contractor did not waive breach by county of implied obligation.

First. The county was obliged to furnish the site within ten days. This is not so. The contractor was obliged to go to work within ten days after carefully reading and considering the plans and visiting the site of the work so that he or it might be thoroughly familiar with the conditions, particularly the difficulties existing at the site, and that no consideration would be given to any claim that a bid was made without full comprehension of the conditions to be encountered; that any loss or damage arising from unforeseen obstructions or difficulties encountered in the prosecution of the work must be sustained by the contractor. More than that, the plaintiff-appellant in submitting its bid certified that having carefully examined the plans and specifications and having carefully studied the site of the work and ascertaining the conditions, particularly the difficulties existing there, the undersigned would provide all means of construction and do the work, &c. Nothing could be clearer than that the county of Atlantic did not have to provide the site, especially did it not have to provide it free from encumbrances. Of course if the county had affirmatively restrained and prevented the contractor from going on the site it might have been liable therefor, but such was not the case.

Second. The act of a third party may have caused default of county to furnish site, but does not release the county. This contention is answered in the cause above discussed. The county made no default. It expressly refused to assume any responsibility for conditions at the *locus in quo,* and it needed no release from any party on account of conditions there.

Third. Delay caused contractor not contemplated by any provision in contract. This as a proposition is utterly un-

tenable. If the contract was barren of any provision contemplating delay, then there was no excuse for delay, for the reasons already hereinbefore stated.

Fourth. By proceeding with the work the contractor did not waive breach by county of implied obligation. The county, as already stated, was under no obligation to supply the site free from encumbrances, nor was it in default, nor was it liable for any damage for delay caused the contractor; he assumed all risk which he ran, and that in as express a manner as words could convey.

In this subdivision of the argument is the real point of the case, that of implied obligation. The plaintiff-appellant relies upon *Mansfield* v. *New York Central and Hartford Railroad Co.*, 102 *N. Y.* 205, in which the plaintiff contracted to erect an elevator within five months, and to commence work within five days after notice by defendant's engineer *of the completion of a foundation.* The plaintiff was notified by the engineer, but, upon preparing to begin its contract, found that the foundations were not complete, and brought suit for damages suffered by reason of the delay; and counsel quotes from the case: "When the breach occurred, the contractors undoubtedly had the option offered them of refusing to commence their work until the foundations were actually ready, or to commence and prosecute it, relying upon the covenants of their contract to recover such damages as the breach occasioned them."

In this case the New York Court of Appeals held that in the circumstances there was an implied covenant, and the court further held, that it was an indispensable condition to the performance of the work that the foundations therefor should be prepared, and a covenant on the part of defendant to have them in condition to enable the contractors to prosecute their work to the utmost advantage and economy before giving notice was clearly implied.

As before mentioned, there was no covenant here on the part of the county that the pipe line would be removed, and no covenant on the part of defendant to have the place in condition to enable the contractor to prosecute the work.

Chief Justice Ruger said in the body of the Mansfield case (at *p.* 211): "It is a well-settled principle of law in the construction of contracts that when the obligation of performance by one party presupposes the doing of some act on the part of the other prior thereto, that the neglect or refusal to perform such act not only dispenses with the obligation of the performance by the other, but also entitled him to rescind, or when rescission will not afford him an adequate remedy, to continue the work and recover such damages as the delinquency has occasioned, against the defaulting party. *Cross* v. *Beard,* 26 *N. Y.* 85, 88.

"The meaning of a contract is to be gathered from a consideration of all of its provisions, and the inferences naturally derivable therefrom, as to the intent and object of the parties in making it, and the result which they intended to accomplish by its performance. It was said by Judge Allen, in *Booth* v. *Cleveland Mill Co.,* 74 *N. Y.* 15, 21: 'There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specified act. If from the text of an agreement and the language of the parties, either in the body of the instrument or in the recital or references, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for non-performance, of which an action of covenant or *assumpsit* will lie.' "

It is to be observed that there was no obligation of performance on the part of plaintiff-appellant which pre-supposed the doing of any act on the part of the county prior thereto, and there was no neglect or refusal to perform any act which dispensed with the obligation of performance by the contractor; in fact he did perform, although belatedly. Nor can it be said that anywhere in the contract was there manifest a clear intention (or any intention at all) that the county should do any act from which an action for damages for non-performance would lie. The subject need not be further pursued. The result depends upon the facts.

The Mansfield case is, in reality, an authority for the defendant-respondent. See, also, *Coudert* v. *Sayre,* 46 *N. J. Eq.* 386, 398.

The trial court was right in nonsuiting, striking out, and directing judgment for the amount mentioned; and the judgment under review should, therefore, be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, CASE, KAYS, HETFIELD, DEAR, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, LLOYD, BODINE, VAN BUSKIRK, JJ. 4.