63 N.J. Super. 470 (1960)
164 A.2d 761
JULIUS FRIEDLANDER, PLAINTIFF-APPELLANT,
v.
IRVING GROSS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1960.
Decided October 28, 1960.
*472 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Sidney Krieger argued the cause for plaintiff-appellant.
Mr. Vincent J. Iacopino argued the cause for defendant-respondent (Messrs. Kein, Scotch & Pollatschek, attorneys).
The opinion of the court was delivered by LEONARD, J.C.C. (temporarily assigned).
Plaintiff appeals from a judgment of the county district court sitting without a jury; this judgment was for the defendant both on the plaintiff's case and on the defendant's counterclaim.
The statement of evidence, taken together with the findings of fact and conclusions of law by the trial judge, indicates the following to have been the material facts in this case.
Plaintiff and defendant on October 9, 1957 contracted for the painting of the defendant's house by the plaintiff, the stipulation being for the applying of two coats of paint for a price of $750. The agreement provided for preliminary scraping of old loose paint in the pre-existing condition of the dwelling. Plaintiff and his workmen applied one coat of paint (primer) in October 1957. The second coat was to be applied in the spring of 1958. In applying the first coat plaintiff failed to a substantial extent properly to scrape the old loose paint. The defendant made a first payment of $275 when the first coat was almost completed. At the time of payment he did not make an inspection. He had *473 complained early in the progress of the work that the scraping was inadequate, but defendant assured him that it would be "all right." In fact, however, it was not "all right," since after the first coat was applied a considerable portion of the house was peeling and still required scraping of the original paint, so that a second coat could not have properly been applied without doing the scraping which had not been done when the first coat was applied. Correction of the situation would have involved a great deal of scraping and reapplication of the first or prime coat in the areas which would have had to be scraped.
Although plaintiff had assured defendant that the condition pointed out to him by defendant would be made "all right," he never did so but, instead, was ready to apply a second coat in the spring of 1958 without remedying the defective work on the first coat. The defendant refused to let the plaintiff go ahead with the application of the second coat but did not give the plaintiff any reason therefor.
The foregoing version of the facts, as found by the trial judge, is amply supported by the court's statement of evidence and must therefore be assumed by us to have been true.
The trial judge found that, except for a small portion of the house for which an allowance was made to the plaintiff as a credit against the award on the counterclaim, the defendant failed to receive performance "of a vital part of the contract." This conclusion is supported by the proofs.
On the foregoing showing it is elementary that plaintiff was not entitled to recover the fair value of the work done, for which he was suing, since the work he did had no value to the defendant. See 98 C.J.S. Work & Labor § 33, p. 766. The evidence and the findings indicate that a substantial part of the house needs to be rescraped, which would require priming most of the house.
The gravamen of plaintiff's argument on both phases of the case is that defendant was obliged to call his attention to the defects at the time the plaintiff requested *474 permission to apply the second coat in the spring of 1958, and that this not having been done, the defects in the work were waived, plaintiff was entitled to recover, and the defendant was precluded from having restitution of the amount which he paid on account. In this connection, it is necessary to distinguish between the significance of the fact thus relied upon as bearing probatively upon the truth of the respective versions of the parties concerning the main factual issue as to the workmanlike quality of the plaintiff's performance, on the one hand, and the legal materiality of the fact of non-complaint by defendant as against an assumption of the fact of plaintiff's substantial default in executing the first phase of the contract, on the other hand. In view of our conclusion that the fact of substantial default by plaintiff in performance of the contract must be taken to be true for purposes of this appeal, defendant's silence as to the reason for not letting plaintiff proceed with the second coat will be found to have no legal materiality under the applicable rules of law. Plaintiff cites no authority, and we know of none, which, absent an express provision in the contract, see 3 Corbin on Contracts (1951), sec. 727, p. 832, would require the aggrieved party to a contract substantially breached by the other contracting party to give notice of the breach before bringing action for damages. Rather does the law appear to be to the contrary. Restatement, Contracts, sec. 304; Trimble v. J.T. Dotson & Son, 258 Ky. 472, 80 S.W.2d 551 (Ct. App. 1935). Nor is there any authority that such notice is required to be given as a condition precedent for a defense against an action on quantum meruit where the facts are that the plaintiff rendered no services of value to the defendant.
The defective performance by the plaintiff in regard to a vital part of the stipulated contract performance, and his failure to perform his promise to defendant to remedy the defects, constitute, in effect, a repudiation by the plaintiff of his obligation under the contract and justified the defendant in treating the contract as terminated, declining *475 further performance on his part, and instituting an action to make himself whole. See O'Neill v. Supreme Council, American Legion of Honor, 70 N.J.L. 410, 412 (Sup. Ct. 1904).
Although there is no evidence in this case that the plaintiff expressly repudiated his contract obligations, nevertheless, under the findings of the trial judge, his conduct amounted to such a repudiation since he deliberately neglected to repair what must have appeared to him as obvious and serious a defect in his performance of the contract as it was to the defendant. Upon the wrongful repudiation by one party of his contractual obligation to the other, the injured party may elect to rescind the agreement either by bringing an action for appropriate relief incompatible with the continued existence of the contract, or by action having that import or notification to the wrongdoer of the rescission. See Levy v. Massachusetts Accident Co., 124 N.J. Eq. 420 (Ch. 1938); S.S. Thompson & Co. v. Atlantic County, 106 N.J.L. 355 (E. & A. 1929); Giumarra v. Harrington Heights, Inc., 33 N.J. Super. 178, 190 (App. Div. 1954), affirmed 18 N.J. 548 (1955).
Defendant's counterclaim here was, in effect, for restitution. This is always an available remedy when the wrongdoer's breach of contract is so serious as to properly be regarded as total. 5 Corbin on Contracts (1951), sec. 1104, p. 461. Under the trial findings here plaintiff's default was clearly of that character and the counterclaim was therefore properly allowed.
Various other points of appeal urged by the plaintiff have been considered and found without merit.
Affirmed.