## OKLAHOMA CITY v. WELLS et al.

No. 28296. Jan. 31, 1939.

Rehearing Denied June 20, 1939.

Application for Leave to File Second Petition for Rehearing Denied July 11, 1939.

A. L. Jeffrey, Warren W. Connor, and Jarman, Brown, Looney & Watts, for plaintiff in error.

W. K. Garnett and Chas. H. Garnett, for defendants in error.

RILEY, J. This is an appeal from a judgment and order of the district court of Oklahoma county in a proceeding commenced by defendants in error to recover for the taking of certain real property by the city of Oklahoma City for public park purposes.

The property involved is lot 7, in block 21, original town site of Oklahoma City; said lot is 25x140 feet facing east on Broadway between First and Second streets. It formed a part of the right of way of the Chicago, Rock Island & Pacific Railway Company, taken over by the city on December 4, 1930.

A. C. Wells obtained title to the lot at the opening of the town site in 1889. He deeded said lot to the Choctaw Coal & Railway Company on March 27, 1891. The deed, however, had the provision therein that said lot was intended for use and occupancy for right of way for railroad, also the proviso that in case of abandonment of said premises by the grantee, its successor and assigns, for the purposes mentioned, the same should revert to the grantor, his heirs or assigns.

The Chicago, Rock Island & Pacific Railway Company acquired the rights of the Choctaw Coal & Railway Company, and by quitclaim deed conveyed its rights to the city of Oklahoma City. The city took possession on December 4, 1930, and thereafter has used said lot, with other lots, parcels, etc., as a public park and has improved it as such.

These proceedings were commenced by Mollie E. Wells, one of the original grantors

370

in the deed to the Choctaw Coal & Railway Company, W. C. Wells, and other children and heirs of A. C. Wells, deceased.

The proceeding is by petition for appointment of commissioners to fix the amount of compensation, and are brought under the provisions of section 11935, O. S. 1931, sec. 57, title 66, Okla. Stats. Annotated.

After the petition was filed and notice served, the city appeared and objected to the appointment of commissioners principally upon the claim that plaintiffs' rights to compensation were barred by the statute of limitations. The objection was overruled and commissioners were appointed. They filed their report and appraisement fixing the damages at $20,000. Thereupon the city filed exceptions and objections to the report of the commissioners based upon some twelve different grounds, among which were alleged statute of limitations, laches and estoppel, and denial of plaintiffs' title to the lot. Plaintiffs also filed exceptions to the report of the commissioners, and plaintiffs filed a demand for a jury trial.

A hearing was had upon the objections and exceptions to the report of the commissioners and said objections and exceptions were by the court overruled. Defendant saved its exceptions and gave notice of intention to appeal from said order.

Thereafter trial was had to a jury, resulting in a verdict fixing the amount of plaintiffs' recovery at $27,000, with interest at 6 per cent. per annum from December 4, 1930.

Thereafter plaintiffs filed a motion for judgment in their favor by computing the interest on $27,000 from December 4, 1930, at 6 per cent. adding the accrued interest to the $27,000, and for judgment for the total sum of $37,980. This motion was sustained, judgment was rendered accordingly, and the city appeals from said judgment, and also appeals from the judgment and order overruling its objections and exceptions to the report of the commissioners.

Thirty-four specifications of alleged error are set forth in the petition in error.

These assignments are presented under three general propositions, viz.: (1) Plaintiffs are barred by the statute of limitations; (2) plaintiffs are guilty of laches and are estopped from maintaining this action; and (3) the judgment of the court in allowing plaintiffs to recover interest is contrary to law. The issue of whether plaintiffs were the owners of the lot in question on December 4, 1930, when the city took possession thereof appears to have been abandoned. It

is apparently conceded that plaintiffs were the owners of said lot on that date.

The question whether plaintiffs were barred by the statute of limitations depends largely upon whether proceedings to ascertain damages for taking or damaging private property for public use are to be treated as an action, as defined in section 9, art. 1, ch. 1, O. S. 1931, or a special proceeding mentioned in section 10 of said article.

It may be observed that section 9 defines an action as "an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 10 does not define a special proceeding, but merely provides that "Every other remedy is a special proceeding".

It must be borne in mind that this is not a proceeding commenced by the city to condemn the lot in question for park purposes, but is a case where the city took possession of said lot under a quitclaim deed from the Chicago, Rock Island & Pacific Railway Company, when the railway company did not own the fee. Such possession was taken without the consent of plaintiffs, and the city thereafter devoted the lot to public use. Plaintiffs could not obtain possession by ejectment, and were left to the remedy provided by law.

The city earnestly contends that this court has in effect held that the remedy in such case is a "suit for damages for the value of the land;" or an ordinary action for damages.

In this connection we are cited to St. Louis & S. F. Ry. Co. v. Mann, 79 Okla. 160, 192 P. 231, wherein it is held:

"Where a public service corporation, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land on the theory that the public has acquired an interest in the appropriation. Under such circumstances an appropriation will be treated as equivalent to title by condemnation."

Other cases by this and other courts are

cited where the same or similar statements are made.

Plaintiff also calls attention to a number of statements in plaintiffs' petition wherein they refer to the proceedings as an "action" or their "cause of action", "action in condemnation", etc. Attention is also called to the fact that the trial court in its instructions states that, "This is an action * * *", etc., and, "The plaintiffs now bring this action, * * *" etc.

The argument is that both plaintiffs and the trial court considered the proceeding as an "action"; that it is in fact an action within the meaning of section 9, art. 1, ch. 1, supra, and therefore subject to the provisions of article 1, ch. 2, O. S. 1931, providing limitations of actions.

It is then contended that plaintiffs are barred by section 101 of the chapter on Limitations of Action, O. S. 1931, and particularly by subdivisions 3 and 6 of said section, in that if it be an action for trespass upon realty, or one for injury to the rights of another not arising upon contract and not otherwise enumerated, it is barred after two years under subdivision 3, and if it be an action for relief not otherwise provided for in said chapter, they are barred after five years under subdivision 6 of said section 101.

On the other hand, defendants in error contend that this is a special proceeding not included in the chapter on limitations of action, and is not therefore barred by any statute.

It matters not what name or term plaintiffs or the court apply to the proceedings, it is the nature rather than the form which determines the applicability of the statute of limitations. 56 C. J. 737. Mathews v. Sniggs, 75 Okla. 108, 182 P. 703.

In Stuart v. Colo. E. R. Co. (Colo.) 156 P. 152, it is said:

"Where a railroad company, having power of eminent domain, but without exercising it, constructs its railroad across the land of another without his consent, who does not prevent the wrongful entry, and the railroad is thereafter in actual operation, and payment for the right of way is not made, the owner will be limited to a recovery of the value of the land actually taken and the damages caused by the taking. In such cases, in some states a suit in the nature of an action in equitable ejectment may be brought to compel condemnation and payment; in other states, the action is termed trespass to try title, similar to ejectment; in other jurisdictions, injunction may be resorted to in the first instance, which is con-

verted into a condemnation proceeding; while in others, the owner may bring a direct action in the nature of an action in condemnation. But the form or name of the action is immaterial. Such actions are all akin to condemnation suits, and are to compel condemnation and payment for the right of way taken and the damages occasioned by the taking."

In Muskogee Elec. Co. v. Madden, 55 Okla. 322, 155 P. 540, it is held:

"Where land is taken for right-of-way purposes without condemnation proceedings or purchase, and a suit is brought upon an implied promise to pay the value of the land, evidence of the reasonable market value of the premises immediately prior to the construction of the right of way across the land and the reasonable market value immediately afterwards is competent."

But in that case it appears to have been conceded by the parties that the remedy of the landowner in such a case was "by a suit in the nature of an action to recover upon an implied promise to pay the value of the land." The question whether or not that was the proper remedy was not contested in that case. The same may be said of other cases cited where an action for trespass has been said to be the remedy and in other cases where it is said the remedy is a common-law action for damages.

We are here confronted with the direct question of what remedy a landowner has whose land has been taken and devoted to public use by a corporation clothed with the right to exercise the power of eminent domain, and has not paid the owner just compensation.

In 10 R. C. L. sec. 190, p. 223, it is said:

"It is settled by the great preponderance of authority, that when land is taken or damaged by authority of a constitutional statute and in compliance with its provisions, and the statute provides a means of recovering damages which may be instituted by the owner of the land, the statutory remedy is exclusive. When the act of the public authorities in entering upon and occupying private land which they have taken by eminent domain in the manner provided by statute, or of making such use of land taken as will necessarily injure neighboring land, is expressly authorized by a statute which provides for the ascertainment and payment of just compensation, such an act is not in any sense wrongful or tortious and cannot be made the basis of an action of trespass or any other action sounding in tort. A common-law action sounding in contract for the value of the land taken will not lie, for there is no implied contract to pay for it except in the manner provided by statute. * * *"

In Kaukauna Water-Power Co. et al. v. Green Bay & Mississippi Canal Co., 142 U. S. 254, 35 L. Ed. 1004, 12 S. Ct. 173, it is said:

"Where a statute for the condemnation of lands provides a definite and complete remedy for obtaining compensation, this remedy is exclusive; the common-law remedy of proceeding is superseded by the statute, and the owner must pursue the course pointed out by it. Mills, Eminent Domain, secs. 87, 88. It is true that if the statutory remedy be incomplete or imperfect, the owner is not thereby debarred from his common-law remedy and may recover his damages in an action of trespass or ejectment."

In Stedman v. State Highway Commission, 174 Okla. 308, 50 P.2d 657, it is held:

"By the provisions of sections 11931-11934, O. S. 1931, the state has provided an adequate remedy for the determination of damages to private persons for property taken or damaged by the state for public use, and such remedy is exclusive."

It is true that in Blackwell, etc., Ry. Co. v. Bebout, 19 Okla. 63, 91 P. 877, it was held that the proceedings then provided by law for condemnation, giving either party the right to institute proceedings where land had actually been taken and devoted to public use, was not exclusive and that the owner might at his election pursue his common-law remedy. But that case was decided before the adoption of the Constitution, which in section 24, art. 2, provides that the compensation must in the first instance be ascertained by a board of commissioners of no less than three freeholders in such manner as may be provided by law. But in that case it is conceded that the greater weight of authority supported the rule that where a statutory remedy is given the owner of property, such statutory remedy is exclusive and supersedes the common-law remedies. The minority rule was followed in that case, which appears to be that where there is nothing in the statute to indicate an intention upon the part of the Legislature that the remedy by condemnation should be exclusive, it is merely a cumulative remedy, and the landowner has his election to choose his remedy. There was nothing then in the Organic Act or the statutes of the territory to indicate an intention of the Legislature that the remedy of condemnation should be exclusive. But when the Constitution was adopted and put in force, section 24, art. 2, supra, specifically provided that private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a board of commissioners of not less than three free-holders in such manner as may be provided by law.

Section 11935, O. S. 1931, provides that the provisions of the article with reference to eminent domain shall apply to all corporations having the right of eminent domain, and that in case any corporation or municipality authorized to exercise the right of eminent domain shall have taken and occupied for purposes for which it might have resorted to condemnation proceedings, as provided in said article, any land without having purchased or condemned the same, the damages thereby inflicted upon the owner of such land shall be determined in the manner provided in the article for condemnation proceedings. From the above constitutional and statutory provision it is clear that the legislative intent is that the remedy afforded by condemnation proceedings shall be exclusive where any part of an owner's land has been taken and occupied for public use without having been purchased or condemned. But when the statutory remedy, however broad it may be, cannot be initiated by the owner of the land, and the condemnor alone can put it into operation and fails to do so, the statutory remedy is not exclusive and the owner may resort to his action at common law. 10 R. C. L. 190, 223.

It is under this latter rule that this court has held that where no part of the owner's land is taken and occupied for public use, but some consequential damage is occasioned by the construction and operation of a public utility, the owner may not avail himself of the remedy of condemnation proceedings, but may resort only to a common-law action. Chicago, R. I. & P. Ry. Co. v. Jennings, 175 Okla. 524, 53 P.2d 691.

Condemnation proceedings do not involve a tort. Strictly speaking, they are not civil actions or suits. They are neither actions at law nor suits in equity. They are not proceedings according to the course at the common law, but are special proceedings. 20 C. J. 872.

It has been so held in some 20 or more states. In Oklahoma, see Lacik v. Colo., T. & M. Ry. Co., 25 Okla. 282, 105 P. 655; Bruner v. Ft. Smith & W. Ry. Co., 33 Okla. 711, 127 P. 700.

Condemnation proceedings not being an action within the meaning of the statutory definition of actions, the question then arises within what time must such proceedings be commenced by the landowner where his land or a part thereof has actually been taken

and devoted to a public use without payment therefor?

On this question the authorities are not in harmony.

In 10 R. C. L. 236, the rule is stated as follows:

"When a special remedy is provided for by statute for the recovery of compensation for land taken by eminent domain, and no time limit for instituting such proceedings is fixed, according to the weight of authority the general statute of limitations for bringing a civil action is not applicable and it is only after the expiration of the period necessary to acquire land by adverse possession that an owner who has allowed his land to be taken without applying for compensation is held to have lost his rights."

Substantially the same rule is stated in Lewis on Eminent Domain (3d Ed.) par. 967. Where no special remedy is available to the landowner, the rule is stated in 10 R. C. L. p. 237:

"In jurisdictions which allow permanent damages to be assessed as of right in an action at common law for the erection of a public work of a permanent character without condemnation proceedings by a corporation clothed with the power of eminent domain, it is clear that after the expiration of the statutory period of limitations in ordinary civil actions, the right to recover for the construction or maintenance of such a work is lost."

But in Indiana, Harshbarger et al. v. Midland Ry. Co., 27 N. E. 352, it is held that the right of action is barred by the lapse of six years. But in Shortle v. Louisville, etc., Ry. Co. (Ind.) 30 N. E. 639, it is held:

"Rev. Stat. 1881, sections 905-12, provide that the owner of land taken by a railroad for right of way, 'may have a writ of assessment of damages.' Sec. 292 provides that actions 'for injuries to property, damages for any detention thereof * * * shall be commenced within six years. * * *' Section 294 provides that all actions not limited by any other statute shall be brought within 15 years. Held, that the proceedings under sections 905-912, being purely a statutory remedy, is not barred by section 292, but is governed by section 294."

Other Indiana cases are cited which hold to the same rule. The rule in that state appears to be that the landowners may elect to sue in damages as for trespass, in which case he must sue within six years, or he may elect to proceed for a writ of assessment of damages under sections 905-912, of the 1881 Code of that state, in which case he must commence such proceedings within 15 years, under section 294, of said Code,

which is equivalent to subdivision 6 of sec. 101, O. S. 1931, except that in Indiana the period is 15 years, while under subdivision 6, supra, the period is five years.

In Wisconsin, Hooe v. C., M. & St. P. R. Co., 73 N. W. 787, and Kansas, A., T. & S. F. Ry. Co. v. Lauterback, 54 P. 11, substantially the same rule is applied. However, from the opinion in the Kansas case it does not appear that the statute gives the landowner the right to institute condemnation proceedings where the railroad company has failed so to do.

Jacob v. Seattle, 100 Wash. 524, 171 P. 662, is cited, as following A., T. & S. F. v. Lauterback (Kan.) supra. It does, but that is a case involving consequential damages, and not the actual taking of plaintiff's land. In this connection attention is here called to the case of Aylmore et al. v. City of Seattle (Wash.) 171 P. 659, decided the same day by the same court, where the actual taking of land was involved; these two cases clearly illustrate the distinction between the two classes of cases. This distinction is clearly recognized in nearly all the states where the question of limitations has been before the court, and must always be kept in mind in applying the statute of limitations.

In some states, Nebraska, Kime v. Cass County, 99 N. W. 546, 101 N. W. 2, and Mississippi, Levee Com'rs v. Dancy, 65 Miss. 335, 3 So. 568, statutes limiting the time within which proceedings to obtain compensation for land actually taken to a less period than is provided for title by prescription are held unconstitutional.

In Pennsylvania, in Carter v. Ridge Turnpike Co., 208 Pa. 565, 57 Atl. 988, it is said:

"If the land was taken under the right of eminent domain, * * * and they are, under the authority of Oliver v. Pittsburgh, etc., Ry. Co., 131 Pa. 408, the proper parties to bring this suit, there can be no question about their right to recover the damages sustained, if the same have not been paid, for no statute of limitations can bar their constitutional right to actual compensation for the land so taken from their ancestors."

It will thus be seen that these authorities holding that in the absence of a special statute of limitations, the ordinary statute of limitations applies; others hold that any statute imposing limitations short of the period requisite to acquire title by adverse possession is unconstitutional, and others hold that no statute of limitations can bar the constitutional right to actual compensation. But the great weight of authority and

the better reasoning support the general rule stated in 10 R. C. L. 236, supra.

Faulk v. Missouri River, etc., Ry. Co. (S. D.) 132 N. W. 233, decided in 1911, is a case where many of the authorities to that date are collected and the question is discussed at length. Some of the authorities cited therein are those cited above. Aylmore v. City of Seattle, supra, decided in 1918, is another case wherein the authorities are collected. It is there held:

"Although landowner who stands by and allows a municipality to take his property by irregular means and use it for a street may be estopped to sue for the recovery of the land, he can still sue for compensation any time before the municipality has acquired title by prescription, and hence Code, section 159, subd. 1, relating to actions for trespass upon real property, and section 165, relating to actions for which provision is not otherwise made, and the period of limitations applicable to actions for the recovery of consequential damages to property not appropriated, do not apply."

The reasons given for the holding by Mr. Justice Webster seem to us unanswerable. He says:

"Upon what principle of law, justice, or reason can it be said that because one clothed with the right to condemn private property fails to exercise it, and without complying with the law goes upon the property of another and carries out its public purposes without hindrance or interference from the owner, it should not thereafter be required to do what it should have done in the first instance—make just compensation to the owner? Why should the property holder whose acquiescence has redounded to the benefit and convenience of the taker and whose right to compensation is in lieu of his property have any less period in which to recover the amount due him than he would have had to reclaim his property had he not thus accommodated the corporation? Why should a municipality which has not exercised a right conferred upon it by the sovereignty in the manner defined by the author of the right gain an additional advantage over a private owner by virtue of its own unauthorized procedure?

"Moreover, to hold that the action for compensation is barred in two years would be to read an exception into the ten-year statute relating to the recovery of real property. The effect of such a decision would necessarily be to permit a title to real property, for all practical purposes, to be acquired by adverse possession for the period of two years when in all other cases it could only be acquired in ten years.

"We think it is too plain for serious debate that while the owner may not by an action of ejectment recover the property itself, where he has acquiesced in its being taken without condemnation, he may maintain an action in the nature of ejectment to obtain the substituted relief. His right of recovery is founded upon and grows out of his title to the land, and until such title is lost by adverse possession he should have the right to maintain an action to recover that which represents the property itself. Any other view is to sacrifice substance to mere form."

Salt Lake Inv. Co. v. Oregon Short Line R. Co. (Utah) 148 P. 439, is another case directly in point. It is there held:

"An action for compensation for the taking of land, where the pleadings admitted defendant railroad's entry upon the land, and its occupation thereof by its railroad tracks without the consent of the plaintiff or any condemnation proceedings, was not governed by Comp. Laws 1907, sec. 2877, subdiv. 2, relating to actions for waste or trespass to real property, nor by section 2883, relating to actions for relief not otherwise provided for, but by section 2860, requiring actions or defenses founded on realty to be commenced within seven years."

Therein Michigan (Wood v. R. R. Co., 90 Mich. 212, 51 N. W. 265), and California (Robinson v. So. Cal. Ry. Co., 61 P. 947), are recognized as holding to the contrary rule. But see Martin v. Western States Gas & Elec. Co. (Cal. App. 2d) 47 P.2d 522, decided in 1935, wherein it is held:

"Appropriation of riparian right to water constituted a 'taking and damaging of real property' contrary to Constitution and not a mere 'trespass on interest in land', and hence action for damages was not barred before expiration of five years necessary for appropriators to have acquired title to water by adverse possession."

Other cases are cited by both parties, but we deem it unnecessary to discuss them or quote therefrom. The great weight of authority, and as we view it the better reasoning, supports the contention of defendants in error that their claim is not barred by any statute of limitations, since the 15 years required to obtain title by prescription has not elapsed. The latest text writers assert that the weight of authority supports this rule. 18 Am. Jurisprudence 1042, sec. 394.

The next proposition presented is that plaintiffs were guilty of laches and are estopped from maintaining this action.

This question was also presented in Faulk v. Missouri River & N. W. Ry. Co., supra. There the land involved had been taken some 16 years before proceedings for compensation were commenced. There as here it did not appear that plaintiff did any act

nor make any statement in regard to his property that would estop him. The court said:

"His title was of record, and the defendant railway company was bound to know that it had not acquired the title of the plaintiff, and consequently that the plaintiff had not been paid the value of the same. Mere delay, short of the statute of limitations, will not estop a party from asserting his right to the property, unless he has been guilty of some act, declaration, or statement that has, in some manner, misled the other party to his prejudice. Not being barred, therefore, by the statute of limitations, other than the prescriptive statute of 20 years, the plaintiff was not required to proceed to recover possession of his property, or to enforce his claim by what is denominated by the Supreme Court of Pennsylvania in the nature of an equitable ejectment; he cannot be deprived of his property by reason of his failure to institute his suit at an earlier date. The defendant railway company and its predecessors in interest could at any time during the 16 years, have instituted proceedings to condemn the right of way, but failing to take any action in the premises, the defendants cannot now be heard to complain that the plaintiff, who was not bound to take any proceedings, had neglected to institute them."

In 21 C. J. 1061, it is said:

"'Estoppel in pais', therefore, includes all forms of estoppel not arising from a record, from a deed, or from a written contract."

And at page 1119, it is said:

"In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice. To constitute an 'estoppel in pais' there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements are wanting. They are each of equal importance. So it has been held that the doctrine of estoppel applies only to voluntary representations, admissions and acts, and not declarations exacted by statute. However, it is not essential that an equitable estoppel should rest upon a consideration or agreement or legal obligation."

Estoppel by acquiescence is founded on knowledge and assent. This is in substance the claim of the city.

But the rule is there can be no assent to that which one is powerless to prevent. 21 C. J. 1217.

Plaintiff in error cites Brusha v. Board of Education of Oklahoma City, 41 Okla. 595, 139 P. 298, in support of its contention. That case is clearly distinguishable. There the board of education had paid Brusha, the true owner, the fair value of the land, and obtained a deed from him. The effectiveness of this deed was not questioned for some 12 years, when the action was commenced by Brusha and his wife to recover possession of the land upon the ground that the tract in controversy was a part of the homestead of Brusha and his wife at the time he executed the deed to the board of education, and the wife had not signed the deed. Clearly Brusha himself was estopped by the plainest principles of equity. He gave the deed, received the consideration, and placed the board of education in possession. As to the wife, it was held that she was in no better position to maintain the action than her husband. She knew of the sale by the husband, took no action to prevent the school board from taking possession, stood by and saw the school board expend some $40,000 in erecting a school building on the land, and made no claim to the land during the twelve years. In the meantime she had, to some extent, recognized the title of the school board in accepting a deed to the balance of the homestead tract from a party, in which deed the land theretofore deeded to the school board was expressly excepted.

In this case the city has never paid plaintiffs for the land. Plaintiffs did nothing toward putting the city in possession. They have done nothing by which they recognize the title of the city as being superior to their title.

It is said, and not denied, that plaintiffs did commence an action in ejectment and were defeated upon the sole ground that the property had been devoted to public use by the city.

The city in taking possession did not rely upon any act of plaintiffs.

Under the rule stated in Faulk v. Missouri River & N. W. Co., supra, plaintiffs are not guilty of such laches as will estop them in this case.

The third and last proposition presented is that the judgment of the court in allowing plaintiffs to recover interest is contrary to law.

In this connection plaintiff in error cites provisions of section 198, O. S. 1931, to the effect that the petition must contain a de-

mand of the relief sought, and if the recovery of money be demanded, the amount thereof shall be stated, and if interest thereon be claimed, the time from which interest is to be computed shall also be stated.

If this be considered an ordinary action at law to recover damages, the claim of plaintiff in error in this regard should be sustained. It has been repeatedly held that a plaintiff in an action for the recovery of money only may not recover interest unless prayed for in the petition in substantial compliance with such statutory provisions, and where interest is claimed and is properly allowable. it may be recovered only to the extent claimed for in the pleadings. Green v. Dunn, 5 Kan. 254; Phenix Ins. Co. v. Weeks (Kan.) 26 P. 410; Alcolea v. Smith, 150 La. 482, 90 So. 769.

It is ordinarily held that interest on an unliquidated claim for damages is not allowable.

But we have held that the proceeding in this case is not an ordinary action at law, but is a proceeding for the recovery of just compensation for property taken and devoted to public use. The Constitution, as heretofore pointed out, provides that private property shall not be taken or damaged for public use without just compensation.

Plaintiffs' property is conceded to have been taken as of December 4, 1930. Just compensation is required by the Constitution as of that date. The jury was properly instructed that the principal recovery is the fair market value of the property actually taken, as of that date. The jury fixed the fair market value of plaintiffs' property as of that date at $27,000. Payment of that amount on that date would have justly compensated plaintiffs for the property so taken. But such payment was not made. Then the question is, would plaintiffs be justly and fully compensated without something for the delay? As we view the law, the general rule is that under constitutional provisions such as ours, where land is actually taken for public use by the U. S. government, a state or any subdivision thereof, or by a corporation having the right to exercise the power of eminent domain, without payment of compensation as required by the Constitution, interest should be allowed from the time of the appropriation or entry on the property. 10 R. C. L. 163.

The first part of section 24, art. 2, of our Constitution is substantially if not identically the same as the Fifth Amendment to the Constitution of the United States. It is well settled that in ordinary cases interest is not recoverable against the United States unless specifically authorized by some statutory provision. But in cases involving the taking of private property for public use, the Supreme Court has held that interest should be allowed where there was long delay between date of entry and the payment of the money.

In United States v. Rogers, 255 U. S. 170, 65 L. Ed. 566, it is said:

"The government was seeking for the purposes authorized by statute, to appropriate the lands, and it had actually taken them, and deprived the owners of all beneficial use thereof from the date from which the allowance of interest ran."

Judgment allowing interest from the date of taking was affirmed.

In Seaboard Airline Ry. Co. v. United States, 261 U. S. 299, 43 S. Ct. 354, lands were taken in 1919. Being dissatisfied with the appraisal, the owner brought suit for compensation. The cause was tried to a jury, and the value of the property was fixed at $6,000, as of May 23, 1919. The district court allowed interest from that date at 7 per cent. per annum, the legal rate in the state wherein the land was located. The Circuit Court of Appeals reversed the judgment as to interest. Certiorari was granted, and the Supreme Court reversed the Circuit Court of Appeals and affirmed the District Court, allowing interest at the legal rate from the date the land was taken. United States v. Rogers, 255 U. S. 163, 65 L. Ed. 566, 41 S. Ct. 281, is a case wherein the question of whether the owner was entitled to recover interest from the date of taking where the United States had taken the land. The contention was that interest could be recovered against the United States only in cases where interest is expressly provided for. Therein it is said:

"Having taken the lands of the defendants in error, it was the duty of the government to make just compensation as of the time when the owners were deprived of their property. * * *

"The government urges that the Conformity Act of August 1, 1888, does not require the United States government to be bound by the rule of the state statute in the allowance of interest. This may be true. but we agree with the courts below that the allowance of just compensation by giving interest from the time of taking until payment is a convenient and fair method of ascertaining the sum to which the owner of the land is entitled."

Simms v. Dillon (W. Va.) 113 A. L. R. 789, is a late case involving the right to recover interest in eminent domain cases.

The Supreme Court of Appeals, after quoting with approval from United States v. Rogers, supra, and other cases, said:

"It seems a fair inference from the foregoing language for us to hold that just compensation under the Fifth Amendment is synonymous with due process of law under the Fourteenth Amendment so far as eminent domain proceedings are concerned, and, therefore, under the authority of the foregoing opinions and cases, that chapter 122 of the 1937 Acts of the Legislature of West Virginia is not unconstitutional because it does not expressly provide for the payment of interest during the interim between the taking of the land and the actual payment of compensation. Under the authority of these cases, it is not necessary to so provide in the statute setting up the eminent domain procedure, but such right to interest is implied, and it will become the duty of the court entering the final award to provide for the payment of interest at the legal rate during the time between the taking and the final payment of the money due."

In 18 Am. Jurisprudence, 912, it is said that interest is allowed as a part of the damages, or compensation, in a great majority of jurisdictions. In the annotation cases are cited from many courts, including the Supreme Court of the United States. Jacobs v. United States, 290 U. S. 13, 78 L. Ed. 142, 54 S. Ct. 26, is a case where the only question involved was the right to recover interest as a part of just compensation. Therein it is held:

"Interest on amount of damages by the construction of a dam to lands intermittently flooded in consequence from date of its completion is a part of the just compensation recoverable by the landowner."

That case is reported in 96 A. L. R. 1. The question of interest allowable in eminent domain is extensively annotated in said volume from p. 150 to p. 211. Therefrom it appears that interest is almost uniformly allowed. Where land is taken under the power of eminent domain the time for which interest runs varies in the different jurisdictions, but it appears that the general rule is that where land is taken and devoted to public use without first resorting to eminent domain proceedings, interest is recoverable from the date possession is taken by the sovereign or other municipality or corporation authorized to exercise the power of eminent domain.

In Oklahoma, in St. L., E. R. & Western R. Co. v. Oliver, 17 Okla. 589, 87 P. 423, it is held that the landowner was entitled to interest from the date of the commissioners' award to the date of verdict. On appeal from such award, and that where the court reserved the question of interest until after the verdict, and where it was clear that the jury did not allow interest, the court could make the computation and add the interest.

In Blackwell, E. & S. W. R. Co. v. Bebout, supra, it is held that interest may be given at the discretion of the jury. But, as stated before, that was a case arising before statehood, and the ruling was based upon the theory that an action for breach of obligation not arising from contract was available to the landowner as well as a proceeding in eminent domain.

We have taken the view that, since the adoption of the Constitution and under the provisions of section 24, art. 2, thereof, the special remedy given by said section and statutes vitalizing same is exclusive.

We hold that there was no error in including interest in the judgment.

The judgment is affirmed.

OSBORN, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., and WELCH, V. C. J., dissent.