GARVIN SOIL CONSERVATION DISTRICT, A. L. Brewer, Lowell Caskey, A. E. Wigley, and R. C. Longmire, as members of the Board of Supervisors of the Garvin Soil Conservation District and C. S. Pratt, as Chairman of said Board, Plaintiffs in Error,

**v.**

Bertha DAVIS, R. C. Davis and Oma Josephine Mitchell, nee Davis, and Tom Davis, Defendants in Error.

No. 40040.

Supreme Court of Oklahoma.

April 23, 1963.

Marvin C. Emerson, Oklahoma City, R. B. Garvin, Pauls Valley, for plaintiffs in error.

Haskell Paul, Pauls Valley, William G. Paul, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for defendants in error.

BLACKBIRD, Chief Justice.

This is an action instituted by defendants in error, hereinafter referred to as "plaintiffs", or by individual name, against plaintiffs in error, hereinafter referred to as "defendants", to recover damages on account of alleged injuries to real estate, often referred to at the trial as the "Davis land", caused by the impounding upon it of water behind an earthen dam defendants had caused to be built across Little Peavine Creek on nearby land in a soil conservation and flood prevention project in the Garvin County watershed of the Washita River.

In all, the Davis land totals 210 acres. It was the allotment of Rosa Ellen Davis, deceased former wife of the plaintiff, Tom Davis. In accord with the terms of her will, a life estate in the land was distributed to him, and the remainder distributed to their adult son and daughter, the plaintiffs, R. C. Davis and Mrs. Oma Josephine Mitchell, nee Davis. Since shortly after her marriage to Tom Davis in 1955, the other plaintiff, Bertha Davis, has resided on the land with him.

Apparently, as a part of an extensive Washita River Valley flood control program, and because Little Peavine Creek rather regularly got out of its banks and flooded the bottom land around its channel during periods of heavy rainfall, the Soil Conservation Service began a study of the area as early as 1957 (or perhaps before) to determine how flood control and soil conservation could best be accomplished by the building of strategically located dams. This work included recording rainfall, as well as gathering data on the terrain, such as taking elevations and making calculations and maps of the watershed of Big Peavine Creek and its tributaries, including Little or East Peavine Creek, to determine where the dams should be constructed to be most effective. After it was determined that one dam should be built westerly from the Davis land extending, at least, at one point, to within 220 feet of its fence line, and that a dam of the size proposed would eventually create a "permanent pool" that would cover in the neighborhood of 60 acres of the Davis land, with the dam capable of retaining as an "emergency pool" enough water that a little more than 80 acres of that tract would be covered, before the water was high enough to flow over the dam's spillway, a Mr. Lowe, of the Pauls Valley Soil Conservation Office, obtained the execution, on December 19, 1957, by the plaintiff, Tom Davis, as grantor, of an instrument entitled "EASEMENT AGREEMENT FOR IMPOUNDING WATER", describing 140 acres in and around Little Peavine channel on the Davis tract, and naming the defendant, Garvin Soil Conservation District, as grantee. In said instrument it was recited, among other things, that the grantee was given the right, privilege, and authority to use the described land " * * * for the storage of waters which may be impounded by a dam to be constructed on other lands: * * *".

Thereafter, in anticipation of the completion of the dam and the impounding of water behind it, the Soil Conservation authorities caused certain trees growing in the bottom along the creek channel on the Davis land to be cut. They also advised

the plaintiff, Tom Davis, with reference to the planting of grasses around the permanent pool boundary line that would further convert the tract, which had not been cultivated as a farm for several years, into "improved" pasture land.

After the dam was completed in December, 1959, or early 1960, water got out of Little Peavine Creek and overflowed the Davis land on three different occasions in 1960. The most water impounded on said land was during heavy rains in May of that year, when the water forming the lake behind the dam reached within 1½ or 2 feet of the dam's emergency spillway. During these high water periods, water stood on different parts of the Davis land, from a few days to weeks, before the lake, which accumulated behind the dam, receded by drainage through the valve, or tunnel, in the dam.

Thereafter, in June, 1960, Tom Davis, was joined by the three plaintiff owners who had not signed the hereinbefore described easement, in commencing this action. On the basis of one of their two alleged causes of action, plaintiffs sought a total of $13,500.00 in damages for alleged injuries to the tract and its various parts, by reason of the building of the dam and the above-mentioned inundations of their land.

At every possible point in the joinder and trial of the issues of the case, beginning with a Motion to Dismiss and a demurrer to plaintiffs' pleadings, and ending with a motion for a directed verdict on that ground, defendants objected to the jurisdiction of the court to award plaintiffs damages in this tort action. Defendants took the position in all such challenges and objections that plaintiffs' remedy, if any, could only lie in a reverse condemnation proceeding. Nevertheless, the court submitted the cause to a jury that returned a verdict in plaintiffs' favor for the sum of $5,000.00; and judgment was rendered accordingly. After the overruling of their motion for a new trial, defendants perfected this appeal, in which they still maintain that the trial court had no jurisdiction to grant plaintiffs recovery in a tort action for damages like this one.

Under their first proposition for reversal, defendants point to the power of eminent domain given soil conservation districts in this State by the Soil Conservation Districts Law, Tit. 2 O.S.1951 § 808, subdivision B, as amended by Senate Bill No. 363, of the Twenty-Sixth Legislature (Tit. 2, Chap. 20, S.L.1957) now appearing as paragraph (5) of Tit. 2 O.S.1961, § 808, Subsec. B; and they rely principally upon Tit. 66 O.S.1951 § 57, Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L. R. 662, and Morton v. Okmulgee Producers & Manufacturers Gas Co., 207 Okl. 201, 248 P.2d 1028, as authority for their position that reverse condemnation was, and is, plaintiffs' exclusive remedy, if any.

Plaintiffs agree that the defendant Garvin Soil Conservation District possesses the power of eminent domain under sec. 57, supra, as to land "taken and occupied", but they contend that on the basis both of certain allegations in defendants' answer and of the undisputed evidence of the temporary nature of the various inundations of their land (that had occurred previous to the trial), there was merely a sustaining of damages by plaintiffs, rather than a taking and occupation of their land. In support of their position, plaintiffs cite City of Blackwell v. Murduck, 206 Okl. 466, 244 P.2d 817, Elk City v. Rice, Okl., 286 P.2d 275, and Chandler v. Oklahoma Turnpike Authority, Okl., 271 P.2d 374.

While it is true that, at the time of the trial, the only water on plaintiffs' land was between the original banks, or in the original channel, or following substantially the original course, of Little Peavine Creek, and the inundations of other areas of the land had been only temporary, so that Tom Davis had not been completely, nor continuously, deprived of their use for all purposes—yet no one denied that eventually part of the permanent pool behind the dam would more or less permanently—or for a period of from 25 to 50 years—cover and

deprive him, and/or his successors, of the use of part of such lands. Nor has it ever been denied that such impounding of water upon this land was an integral, and essential, part of the planning of the dam on the nearby land, or that such use of certain portions of it, determined, in advance of the dam's construction, by engineering calculations, was (as Tit. 2 O.S.1961 § 808, subd. B puts it): "* * * deemed by the supervisors to be necessary for upstream flood control purposes * * *" in the Washita River Valley area. This is the salient fact that distinguishes this case from those in which the flooding of land, other than that on which the public use structure was located, was *merely incidental to, rather than a necessary part of*, the public purpose use, scheme, or plan, to be served by the building of the dam or other facility. Having pointed this out, we deem it unnecessary to demonstrate in further detail the inapplicability of plaintiffs' foregoing case citations. We agree with defendants that they should not be subjected to successive tort actions for recurring, or more extensive, injuries to plaintiffs' land from inundation during the period in the future before the dam's permanent and emergency pools are filled, since such inundation was anticipated and contemplated when the Tom Davis easement was obtained; and the land used, or taken and occupied thereby, could have been condemned for the soil conservation project, under the authority of sec. 808, subd. B, supra. Having so concluded, we hold, that reverse condemnation proceedings was plaintiffs' only remedy, if any, for the injuries they herein claimed, and the trial court erred in rejecting defendants' challenges to its jurisdiction to award them damages as if their injuries arose from tort. The judgment of said court is therefore reversed and remanded to said court, with directions to dismiss this action for want of jurisdiction.

HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.