HART v CITY OF DETROIT

Docket No. 78-3489. Submitted January 8, 1980, at Detroit.—Decided
June 2, 1980. Leave to appeal applied for.

Sylvia Hart and several others brought an inverse condemnation
class action against the City of Detroit, claiming that the city
had taken their property as part of an urban renewal project
without paying any compensation therefor. All of the subject
properties were acquired either directly or indirectly as a result
of nonpayment of taxes. The Wayne Circuit Court, Benjamin D.
Burdick, J., determined that the claims of the owners of all but
seven of the properties were barred by the three-year statute of
limitations pertaining to damages for injuries to persons or
property, setting the date on which each former owner's right
of equity of redemption expired as the date on which the
statute began to run, and granted the city's motion for acceler-
ated judgment as to those plaintiffs, who now appeal. The
issues on appeal are whether the trial court applied the proper
statute of limitations and whether that statute of limitations
was properly applied to the facts. *Held:*

1. The three-year statute of limitations was the proper limita-
tion period to apply in this case wherein the plaintiffs had no
ownership rights for three years prior to the filing of suit.

2. The trial court correctly determined that the plaintiffs'
claims accrued on the dates on which each of their rights of
equity of redemption expired because that was the last day on
which the plaintiffs held any interest in their realty and the
first day where a fixed value could reliably be determined.

Affirmed.

R. M. MAHER, P.J., dissented. He would hold that, because
the taking of private property for public purposes without
payment of compensation is analogous to the dispossession of a
rightful owner by adverse possession, the 15-year statute which

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Eminent Domain § 478 *et seq.*
[2] 27 Am Jur 2d, Eminent Domain § 500.
[3-6] 27 Am Jur 2d, Eminent Domain §§ 498-500.

applies to adverse possession is the proper limitation period to apply to an inverse condemnation action. He would reverse.

Opinion of the Court .

1. Property — Real Property — Limitation of Actions — Personal Actions — Inverse Condemnation — Statutes.

Real property rights are not rights to which one is entitled by reason of being a person in the eyes of the law, rather, they accrue by virtue of an interest in real property; therefore, the 6-year statute of limitations for "all other personal actions" does not apply to an inverse condemnation action (MCL 600.5813; MSA 27A.5813).

2. Property — Real Property — Limitation of Actions — Inverse Condemnation — Adverse Possession — Statutes.

The 15-year limitation period for actions involving adverse possession should not be applied in an inverse condemnation action where the plaintiffs have not retained any ownership rights in the property involved because the defendant, a municipal corporation, has obtained all of the property in question by means of tax deeds or indirectly from the state (MCL 600.5801[4]; MSA 27A.5801[4]).

3. Property — Real Property — Taking — Inverse Condemnation — Statutes.

A "taking" of real property includes injury to and diminution in the value of real property; therefore, the statute of limitations covering actions involving injury to property is the correct limitation period to apply in a case of inverse condemnation in which a municipal corporation acquired property for an urban renewal project via tax deeds and purchases from the state (MCL 600.5805[7]; MSA 27A.5805[7]).

4. Property — Real Property — Taking — Accrual of Claim — Limitation of Actions.

A cause of action arising from a taking of real property does not accrue, nor does the statute of limitations on such action begin to run, until the consequences of the governmental action have so manifested themselves that a final account may be struck; the period of limitation began to run, in a case of inverse condemnation in which a city acquired property by tax deeds and purchases from the state, on the date on which the owners' rights of equity of redemption expired because that was the first date on which a fixed value could reliably be determined.

                 DISSENT BY R. M. MAHER, P.J.

5. LIMITATION OF ACTIONS — PURPOSE.

    *Statutes of limitation are generally considered to be procedural
    rather than substantive, and their purpose is to guard against
    stale claims.*

6. PROPERTY — REAL PROPERTY — LIMITATION OF ACTIONS — INVERSE
    CONDEMNATION — ADVERSE POSSESSION — STATUTES.

    *The 3-year statute of limitations, when applied to an "injury to
    property", is generally applied to the loss of personal property
    or the interference in the use or value of real property; a case
    in which a governmental body has taken the property for a
    public use without paying any compensation is more analogous
    to a dispossession by adverse possession and should be governed
    by the 15-year limitation period on actions for adverse posses-
    sion (MCL 600.5805, 600.5801[4]; MSA 27A.5805, 27A.5801[4]).*

*Mason, Steinhardt, Kellman & King,* for plain-
tiffs.

*Monaghan, Campbell, LoPrete, McDonald &
Norris* (by *Boris K. Yakima,* Special Assistant
Corporation Counsel), for defendant.

Before: R. M. MAHER, P.J., and M. F. CAVANAGH
and CYNAR, JJ.

CYNAR, J. This appeal involves an inverse con-
demnation class action suit. The original com-
plaint in this action was filed May 9, 1974. The
class was certified pursuant to GCR 1963, 208, on
April 7, 1977. After all eligible classs members
were notified, owners of 42 parcels of land joined
the class. Defendant moved for accelerated judg-
ment, and on August 18, 1978, the trial court
granted the same, on the ground that the claims of
all but seven of the plaintiffs were barred by the
statute of limitations pertaining to damages for

injuries to person or property.[1] Those seven plaintiffs are not parties to this appeal, which is taken as of right.

I. *Facts*

This appeal is submitted on a stipulated statement of facts. The statement indicates that the parcels of realty in question are located within the boundaries of defendant's Elmwood Park Urban Rehabilitation Project No. 3 (Elmwood 3). A part of Elmwood Park,[2] the affected area contains approximately 1,400 separate parcels of land. Elmwood 3 was originally conceived by city planners in the mid-to-late 1950's. As part of its urban renewal efforts, defendant City of Detroit has acquired and demolished the structures upon virtually every parcel within Elmwood Park in order to facilitate redevelopment.

All parties have stipulated that the actions of defendant in the Elmwood 3 project resulted in a *de facto* taking of plaintiffs' property without just compensation therefor. However, in each instance the subject properties were either directly or indirectly acquired by defendant as a result of nonpayment of taxes.[3] This occurred after the *de facto* takings but well prior to the commencement of any formal condemnation proceedings by defendant. The plaintiffs now appealing were not joined as parties to any of 12 formal condemnation pro-

---

[1] The trial court relied upon MCL 600.5805(7); MSA 27A.5805(7) as in effect on the date accelerated judgment was granted. This period of limitations, three years, is now found in MCL 600.5805(8); MSA 27A.5805(8).

[2] Elmwood Park, an area on the lower east side of Detroit, not far removed from downtown, also includes Elmwood 1 and 2, Urban Renewal Areas as well, which abut Elmwood 3.

[3] The parcels were conveyed via tax deeds. Those acquired indirectly were purchased by defendant from the State of Michigan for a nominal consideration of $1 per parcel.

ceedings filed by defendant from August 3, 1971, to November 27, 1972.[4]

On May 9, 1974, the within action was instituted, well after all the parcels involved in this controversy were conveyed for nonpayment of taxes, and more than three years after the right of equity of redemption had expired with respect to every parcel.

Because this right had expired with respect to the parcels formerly owned by the plaintiffs on appeal, the lower court concluded that each plaintiff's cause of action accrued, at the latest, on the date of expiration of their right to redeem. Applying (as noted hereinbefore) the three-year statute of limitations found in MCL 600.5805(7); MSA 27A.5805(7), the trial court held that the claims of the plaintiffs now appealing were barred thereby because their claims accrued, at the latest, more than three years prior to the institution of the class action suit, and were thus without the statute of limitations.

## II. *The Appropriate Statute of Limitations*

The first question for consideration is whether the three-year statute of limitations found in MCL 600.5805(7); MSA 27A.5805(7)[5] is applicable to inverse condemnation actions.

Plaintiffs argue that no statute of limitations should apply, as none can bar inverse condemnation actions. According to plaintiffs, due process

---

[4] The named plaintiff, Sylvia Hart, is not a party to this appeal, the lower court having ruled that her inverse condemnation suit was filed within the applicable limitations period. The other six plaintiffs who are not parties to this appeal were included in the formal condemnation proceedings instituted by defendant. The remaining class members are parties to this appeal.

[5] This subsection reads as follows:

"(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."

rights guaranteed by both the Federal and State Constitutions are being invoked, and no statute of limitations can cut off those rights.

Defendant contends that the three-year limitations statute was properly applied by the trial court. As defendant views it, a "taking" has been held to include serious injury or damage to private property, thus a taking of real property should fall under the ambit of a statute of limitations provision barring actions pertaining to injury to property.

We initially reject plaintiffs' claim that, since due process rights are involved in the instant litigation, no statute of limitations can be imposed to vitiate those rights. In a different context, but one nonetheless concerned with a deprivation of due process rights, this Court concluded that *some* statute of limitations must apply. *Citizens for Pre-Trial Justice v Goldfarb,* 88 Mich App 519, 529-531; 278 NW2d 653 (1979). With this conclusion we agree.

We are likewise unable to accept plaintiffs' argument that MCL 600.5813; MSA 27A.5813, which establishes a six-year statute of limitations for "all other personal actions", is applicable to inverse condemnation proceedings. We do not find personal claims to include claims predicated upon real property rights. *Cf., Stringer v Board of Trustees of Edward W Sparrow Hospital,* 62 Mich App 696, 700-701; 233 NW2d 698 (1975), *lv den* 395 Mich 768 (1975). These are not "rights to which one is entitled by reason of being a person in the eyes of the law". *Id.* They instead accrue by virtue of an interest in real property.

We are further unpersuaded by plaintiffs' assertion that the adverse possession period in this state is the proper limitation of actions provision

to employ in this case.[6] In support of this position, plaintiffs cite *Brazos River Authority v City of Graham,* 163 Tex 167; 354 SW2d 99 (1961), and *Frustuck v City of Fairfax,* 212 Cal App 2d 345; 28 Cal Rptr 357 (1963). We perceive insuperable obstacles to an even-handed application of such a provision in inverse condemnation actions.

First, with adverse possession the point at which the statute begins to run is clear-cut and easy to define: the open and hostile possession of land under claim of right to the exclusion of the true owner placed on notice of the claim. *Wood v Denton,* 53 Mich App 435, 440-441; 219 NW2d 798 (1974).

Contrarily, the point at which a "taking" commences is not as easily pinpointed since in most cases the true owner will not suffer a privation of seisin. Moreover, a distinction between when a "taking" occurs and when a plaintiff's cause of action arises has evolved under both Michigan and Federal case law.

*United States v Dickinson,* 331 US 745; 67 S Ct 1382; 91 L Ed 1789 (1947), clearly illustrates the above point. In that case the Federal government, without condemning Dickinson's land, dammed a river and raised the water level in stages until the land was flooded. More than six years after water began to flood Dickinson's land, but less than six years after that water reached its ultimate level, Dickinson brought an inverse condemnation action. The applicable statute of limitations under the Tucker Act was six years.

The Court noted that, although perhaps the taking occurred at the time the water began to pour onto Dickinson's land, it would be unfair to

---

[6] The relevant statute is MCL 600.5801(4); MSA 27A.5801(4), which has a period of limitations of 15 years.

hold that his cause of action accrued prior to the water reaching a stabilized level. Only then could Dickinson know the extent of the damage.

If this concept of a "continuous wrong", which is applied in inverse condemnation actions, is coupled with the 15-year adverse possession statute of limitations, there will be two untoward results: (1) the statute would not be applied in inverse condemnation actions in the manner it was intended under the theory of adverse possession, *i.e.,* that it would run from the time of taking; and (2) the period of time in which a plaintiff could bring suit would be abnormally long.

Furthermore, although applying the adverse possession limitation period is at least arguably sensible in an inverse condemnation case where a plaintiff retains ownership of the affected property and is still the owner at the time suit is brought, it is questionable whether that statute should apply in a case such as this one where plaintiffs had no ownership rights (legal or equitable) for more than three years prior to the date the suit was filed. In such case, plaintiffs would retain the right to bring suit for a "taking" of the property for 15 years or more after that taking, no matter what third party was presently the true owner.

Accordingly, we decline to apply the adverse possession statute of limitations to *this* inverse condemnation action.

We now examine whether MCL 600.5805(7); MSA 27A.5805(7) is the proper statute of limitations to apply to the instant factual situation.

Const 1963, art 10, § 2 provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law."

The term "taking" has historically been interpreted in this jurisdiction to include not only instances of an absolute conversion of property but also cases involving a marked diminution in property value resulting from government action and cases where serious injury is inflicted upon the property itself. *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 641-642; 178 NW2d 476 (1970), *inter alia.* Since Michigan appellate courts have consistently interpreted the term "taking" to include injury to, and diminution in the value of, real property, we are persuaded that the statute of limitations covering injury to property was the appropriate one to apply to the "taking" conceded to have occurred here, and therefore we so hold.

III. *Application of MCL 600.5805(7); MSA 27A.5805(7)*

Having concluded that the trial court utilized the proper statute of limitations in ruling upon defendant's motion for accelerated judgment, we now turn to the trial court's application of the same to the facts of the case at bar. In analyzing this issue, the paramount question is when the claims of the plaintiffs accrued, thereby triggering the running of the statute as against those claims.

As touched upon in the discussion in II, *supra,* the notion of a "taking" does not necessarily fixate upon any precise moment in time or any single event, but can instead be fluid or continuous. It has thus been said that a cause of action arising from a taking does not accrue, nor does the statute of limitations begin to run, until the consequences of the governmental action "have so manifested themselves that a final account may be struck". *United States v Dickinson, supra,* 749. Or to phrase it differently, the action accrues when the

situation becomes "stabilized". *Silverstein v Detroit,* 335 F Supp 1306, 1309 (ED Mich, 1971).

The lower court in the case *sub judice* concluded that plaintiffs' causes of action accrued, at the latest, on the date that their rights of equity of redemption expired. In essence, the court held that the situation "stabilized" as to each plaintiff on that date.

We concur with the conclusion of the trial court on this point. The day the right of equity of redemption expired was the last date plaintiffs held any interest in the realty which is the subject of this controversy. It is the logical point at which to conclude that the situation "stabilized", or that a final account could be struck; it is the first date where a fixed value could reliably be determined with respect to the plaintiff's properties.

Since, as to all the plaintiffs on appeal, this date was more than three years prior to the commencement of this class action, we are compelled to hold that the action was not timely brought by them under MCL 600.5805(7); MSA 27A.5805(7), as then in effect. Therefore, as to those plaintiffs, the action was barred by the above-cited provision.

IV. *Conclusion*

In summary, we affirm the decision of the lower court with respect to the proper statute of limitations to employ and as to the correct application of that statute to the facts of this case.

Affirmed. No costs, a public question being involved.

M. F. Cavanagh, J., concurred.

R. M. Maher, P.J. *(dissenting).* I must dissent from the majority's opinion which finds the three-

year statute of limitation in MCL 600.5805(7); MSA 27A.5805(7)[1] applicable to this case.

Generally, statutes of limitations are considered to be procedural rather than substantive. *Buscaino v Rhodes,* 385 Mich 474, 480; 189 NW2d 202 (1971). Statutes of limitations are statutes of repose, *i.e.,* their purpose is to guard against stale claims, where the loss of evidence or witnesses due to death or lapse of time may render the case impossible of proof. *Bigelow v Walraven,* 392 Mich 566, 570; 221 NW2d 328 (1974), *Buscaino v Rhodes, supra.*

MCL 600.5805; MSA 27A.5805 provides the limitations periods for various injuries to persons or property. Included in this statute are the personal torts of assault, battery, and false imprisonment; malicious prosecution; malpractice; misconduct of sheriffs; negligence of a constable; libel or slander; and all other injuries "to persons and property".[2] The limitation periods range from one to three years. The relatively short limitation period can readily be explained by the personal nature of these torts. Personal knowledge and recollection by witnesses is crucial to show an assault, battery, libel, etc., since usually their effect is not permanent.

The three-year limitation period, when applied to an "injury to property", has usually been applied to the loss of personal property, for example, cows which were electrocuted by power lines, *State Mutual Cyclone Ins Co v O & A Electric Cooperative,* 381 Mich 318; 161 NW2d 573 (1968); pigs that

---

[1] I note that the statute was amended in 1978, and the relevant portion, MCL 600.5805(8), provides:

"(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property."

[2] MCL 600.5805(1)-(7); MSA 27A.5805(1)-(7).

became ill and also began to eat each other, *Nelson v Michigan Bean Co,* 22 Mich App 540; 177 NW2d 655 (1970); defective floor tiles, *Southgate Community School Dist v West Side Construction Co,* 399 Mich 72; 247 NW2d 884 (1976). Other actions which were appropriately brought under MCL 600.5805(7) had to do with interference in the use or value of real property, *e.g.,* railroad tracks which prevented egress or ingress from one direction, *Green v Grand Trunk Western R Co,* 287 Mich 29; 282 NW 890 (1938); erection of a viaduct in front of the plaintiff's property, *Kipp v State Highway Comm'r,* 286 Mich 202; 281 NW 592 (1938).

In the instant case, we are not dealing with the loss of personal property, nor are we dealing with the diminution in value or interference with use or enjoyment of real property. We have before us a group of persons whose claim is that the government's actions resulted in the total loss of their real property, a "taking" without the payment of compensation, which is the essence of an inverse condemnation proceeding. *Tamulion v State Waterways Comm,* 50 Mich App 60, 66; 212 NW2d 828 (1973).

The law jealously guards against interference with the rights of ownership. The Michigan Constitution, 1963, art 10, § 2 requires the government to condemn property only after the proper procedures have been followed and "just compensation" has been paid to the owner. If the government has not followed the prescribed procedures, and has taken private property for a public use without paying any compensation whatsoever, it is more closely analogous to a situation where the rightful owner is dispossessed by adverse possession, which is governed by a 15-year statute under MCL 600.5801(4); MSA 27A.5801(4).

Indeed, the prescriptive period of adverse posses-
sion has been applied to inverse condemnation
cases in other jurisdictions. In *Brazos River Au-
thority v City of Graham,* 163 Tex 167; 354 SW2d
99 (1961), the Texas Supreme Court said, 163 Tex
167, 182-183; 354 SW2d 99, 109-110:

"We might add, however, that insofar as the sewage
disposal plant is concerned, we have a taking by inverse
condemnation and the great weight of American au-
thority supports the position that, absent a particular
statute covering the situation, the land limitation
rather than the general limitation statutes apply to
such inverse condemnation proceedings. Ackerman v
Port of Seattle, 55 Wash 2d 400, 348 P2d 664 [77 ALR2d
1344]; Aylmore v City of Seattle, 100 Wash 515, 171 P
659 [LRA 1918E, 127]; Oklahoma City v Wells, 185 Okl
369, 91 P2d 1077 [123 ALR 662]; cases collected in
Annot, 123 ALR 676; 18 Am Jur, Eminent Domain,
§ 394. The Texas rule is in accord. In case of a 'taking'
of property, the City's right thereto would not be barred
if ever until the expiration of the ten year period
necessary to acquire lands by adverse possession under
Art 5510, Vernon's Ann Tex Stats. Tarrant County
Water Control and Improvement Dist No 1 v Fowler,
175 SW2d 694, Texas Civ App, wr ref w.o.m., [142 Tex
375,] 179 SW2d 250. See also, Tarrant County Water
Control and Improvement Dist No 1 v Reid, [Tex Civ
App,] 203 SW2d 290, wr ref n.r.e."

See also, *Shepherd v City of Austin,* 543 SW2d
185, 187 (Tex Civ App, 1976).

In *Frustuck v City of Fairfax,* 212 Cal App 2d
345, 374; 28 Cal Rptr 357, 375 (1963), the Califor-
nia Appellate Court decided that the three-year
limitation period for injury to real property which
was applicable to trespass cases should not apply
to inverse condemnation proceedings, reasoning as
follows:

"* * * We reason that acts constituting inverse condemnation amount to more than those of simple trespass. The former involve the taking or damaging of real property for a public use. When an act of trespass amounts to a taking or damaging for a public use it is more than a mere trespass *on* an interest in land, but it takes from the owner of the land something necessary and essential to the use and enjoyment of the property and thus results in the taking away of a valuable property right. To put the matter at rest, we are satisfied that section 338, subdivision 2, applies to acts of trespass or injury to property which do not involve the taking or damaging of private property for a public use pursuant to article 1, section 14 of the California Constitution."

Use of the 15-year period in inverse condemnation proceedings involving loss of property would protect the interest of the landowner without working an injustice on the governmental body. This is because the nature of the proof differs from the usual trespass or tort injury. In an inverse condemnation situation, there is usually a well-documented change in the property itself over a prolonged period. In any case, since the plaintiffs bear the burden of proof in inverse condemnation proceedings,[3] any loss of evidence or witnesses would be a greater detriment to them than to the governmental defendant.

I would reverse.

---

[3] *Muskegon v DeVries,* 59 Mich App 415; 229 NW2d 479 (1975).