JINKNER v. TOWN & COUNTRY LANES, INC.

SAME v. ROSE BOWL LANES, INC.

1. APPEAL AND ERROR—FINDINGS OF FACT—NONJURY CASE.
Court of Appeals in reviewing a nonjury case must accept the trial judge's findings of fact unless they are clearly erroneous.

2. CONTRACTS—FINDING OF FACT—EVIDENCE—BOWLING PIN REFINISHER.
Trial judge's finding of fact that plaintiff bowling pin refinisher had agreed to rebuild bowling pins for defendant bowling alley operators in such a way that the pins would be usable and have some life as used pins *held*, clearly erroneous, where the only testimony of defendants was that plaintiff had agreed to improve the appearance of the pins and would not guarantee that their useful life would be extended, and plaintiff's undisputed testimony was that he had agreed only to improve the appearance of the pins.

3. SAME—FAILURE OF CONSIDERATION.
*Failure of consideration* means a failure of performance of a contract which justifies the other contracting party in refusing to perform at all.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[3, 5] 17 Am Jur 2d, Contracts § 397.
[4] 17 Am Jur 2d, Contracts § 400.
[6-8] 17 Am Jur 2d, Contracts § 371.
[9] 5 Am Jur 2d, Appeal and Error § 974.

4. SAME—FAILURE OF PERFORMANCE.

Any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional.

5. SAME—FAILURE OF CONSIDERATION—REFINISHING BOWLING PINS.

Failure to rebuild bowling pins or to add to their usability or life beyond improving their appearance, *held*, not to constitute a failure of performance by plaintiff refinisher, hence not to establish failure of consideration, where there is no evidence of an agreement to rebuild or add to usability or life of the pins.

6. SAME—REPAIRS—IMPLIED WARRANTY.

Every workman who undertakes to repair the goods of another impliedly agrees to do so in a workmanlike manner even though such an agreement is not expressed.

7. SAME—REPAIRS—WARRANTY—DAMAGES.

The law implies an undertaking to perform work in a reasonably skilled and workmanlike manner in a contract to repair, but it does not follow that a person must answer in damages for anything which may later go wrong with an article he has undertaken to repair.

8. SAME—IMPLIED WARRANTY—REPAIR.

Liability for breach of implied warranty of repair can be imposed only when it is shown that improper methods or defective materials were used or that the workman is otherwise guilty of a breach of his implied warranty.

9. APPEAL AND ERROR—REMAND—CONTRACT TO REFINISH BOWLING PINS.

Remand of nonjury action by bowling pin refinisher against bowling alley operators for services rendered in refinishing bowling pins is ordered to be made on existing record, where trial judge had made a clearly erroneous finding of fact as to what had been the agreement, the determination on remand to be whether plaintiff had breached its implied agreement to refinish the pins in a workmanlike manner, and, since the defendants pleaded failure of consideration, trial court is required to determine whether any such breach by plaintiff was material.

Appeal from Common Pleas Court of Detroit; Stanczyk (Benjamin C.), J. Submitted Division 1

January 6, 1967, at Detroit. (Docket Nos. 1,388, 1,389.) Decided April 2, 1968.

Actions by John and Geraldine Jinkner, doing business as Permo-Plastics, against Town & Country Lanes, Inc., and Rose Bowl Lanes, Inc., Michigan corporations, to recover for services rendered in refinishing bowling pins. Cases consolidated for trial and appeal. Judgment of no cause of action. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Kenneth C. Davies* (*Richard Boyce,* of counsel), for plaintiffs.

*Lewis Daniels* and *James M. Wienner,* for defendants.

Levin, J. Plaintiffs John and Geraldine Jinkner, doing business as Permo-Plastics, a company engaged in the manufacturing, resurfacing and refinishing of bowling pins, appeal from a judgment of no cause of action. Plaintiffs (hereinafter referred to in the singular as Jinkner) seek to recover $508.50 from Town & Country Lanes, Inc., and $603 from Rose Bowl Lanes, Inc., for services rendered in refinishing bowling pins. The defendants admitted the amounts claimed were the agreed price for the refinishing work, but they asserted the work had been done improperly.

Mr. Jinkner testified that the objective sought to be achieved by refinishing the pins was improvement of their appearance to the player, and that the agreement of the parties did not require Jinkner to rebuild the pins and the work done by Jinkner could not possibly have affected the structural quality of the pins. He stated he advised the defendants

against spending money to rebuild the pins, but that they could "get a few more lines out of them" if refinished.

Before delivery to Jinkner of the pins to be refinished, the defendants made patch repairs of chips and holes in the pins as appeared necessary to them. When the pins were received by Jinkner those pins which Jinkner thought unworthy of refinishing were returned to the defendants. The remainder were cleaned and buffed preparatory to the refinishing process itself. Surfaces of some of the pins were ground and on others cracks in the plastic were touched up. The refinishing process itself consisted of two steps, painting the pins with white paint and then lacquering the repainted pins.

The defendants testified that the refinished pins began to "break up" within 1 to 3 weeks after they were returned to the defendants. It was claimed that chunks of wood and plastic fell off some pins and part of the outer layer of other pins peeled off; and that within a month about 90% of the refinished pins could no longer be used, necessitating the removal of all the refinished pins from service. There was testimony that refinishing work done by other refinishers on other pins belonging to the defendants performed satisfactorily for periods substantially in excess of the period during which the pins refinished by Jinkner remained serviceable. Mr. Jinkner suggested that the breaking-up and peeling conditions described by defendants' witnesses were due to defective patching by the defendants or inherent defects in the pins or other causes for which Jinkner was not responsible.

The trial judge found[1] that the parties had agreed Jinkner was to do more than a "cosmetic job," and

---

[1] The following is the complete text of the trial judge's findings: "The situation here is one where the plaintiff holds himself out to the public as an expert in the business of refinishing and rebuild-

that Jinkner agreed to rebuild the pins "in such a way that they would be usable" and would have "some life.as used pins."[2] The trial judge concluded there was a total failure of consideration and entered a judgment of no cause of action.

Jinkner contends that the judgment is without evidentiary support. The defendants stress our limited powers of review of findings of a trial judge sitting without a jury. We acknowledge we are bound to accept the trial judge's findings of fact unless they are clearly erroneous. GCR 1963, 517. We have concluded they are.

The trial judge assumed, without supporting evidence, that the parties could not have intended and, therefore, did not intend to enter into a contract merely to improve the appearance of the pins because he thought it would not be reasonable for the defendants to have agreed to spend $4.50 per set of 10 pins merely to refinish the pins. Thus, the agreement of the parties must have been, so he

---

ing these bowling pins. He would now want the court to believe all he contracted for was comparable to putting a ribbon on the package. It was going to be strictly a cosmetic job. It's hard to believe that business people of the sort we're dealing with here, both plaintiff and defendant, would enter into a transaction involving the kind of money we're taking about, about $1,100, where this was going to be the only effect of this work, namely, that the pins would look new, nothing else would be gained from them. I don't think this was the agreement the parties entered into. The pins were going to be rebuilt in such a way that they would be usable. The defendant was going to do the patching on them. The plaintiff, at his plant, was going to do whatever grinding, whatever buffing, was necessary and do whatever else was necessary so that they would have some life as used pins.

"The court finds there's been a total failure of consideration. The plaintiff has not performed. Therefore, he's not entitled to recovery. Judgment is no cause."

[2] The trial judge's findings appear to paraphrase the testimony of Edwin A. Vater, manager of Town & Country, who testified that: "It was my understanding the pins were going to be refinished, whatever his process was, to the point they would be usable. In other words, he was going to extend the life of the pins, *to make them nice to look at.*" (Emphasis added.) However, Mr. Vater earlier testified he did not negotiate the agreement between Jinkner and Town & Country and was not aware of its terms.

found, that they would be "rebuilt" in a manner which would prolong their useful life. We find no support in the record for such findings or conclusions.

Three witnesses testified: Edwin A. Vater, manager of Town & Country; Fred M. Woodward, manager of Rose Bowl; and Mr. Jinkner.

Mr. Vater testified that the contract with Jinkner was negotiated by a representative of Town & Country's parent corporation. Mr. Vater stated he was, therefore, unable to testify concerning the substance of the agreement. His conversations with Mr. Jinkner were confined to making arrangements for delivery and return of the pins and subsequent complaints concerning the allegedly defective refinishing work. It is not contended that in the course of these conversations any admissions were made by Mr. Jinkner which would support the trial judge's findings.

The trial judge was not justified in finding there was an agreement to rebuild the Town & Country pins, or to make them usable, or to add life to them beyond improving their appearance, in the face of Mr. Vater's testimony that he did not know the terms of the agreement and Mr. Jinkner's undisputed testimony that the agreement was only to improve the appearance of the pins.

Mr. Woodward, manager of Rose Bowl, testified that at the time the agreement for the refinishing work on the Rose Bowl pins was negotiated Mr. Jinkner had stated that the pins "would be recoated. They would look like new and stand up. He said he couldn't tell the life lineage of the pin we would get—how much lineage we would get, however he had cases where they had been in for six, eight months." Mr. Woodward was then asked on cross-examination: "Are you telling us Mr. Jinkner guar-

anteed the pins would stand up?" He replied: "He said for looks. * * * He said he couldn't guarantee any lines. From past experience houses have had 6 to 8 months in. He wouldn't guarantee it."

Mr. Jinkner's statement that the refinished pins would "stand up," as qualified by the words "for looks," does not support the finding that Jinkner agreed to rebuild the pins, or to make them usable or add to their useful life beyond improving their appearance.

There was no evidence that the alleged representation that other bowling alleys had 6 to 8 months' use of pins refinished by Jinkner was false. Also relevant in this connection is Mr. Woodward's testimony that Mr. Jinkner stated that Jinkner would give no assurance as to the "life lineage" of the refinished pins or "guarantee any lines."

"Failure of consideration" means a failure of performance which justifies the other contracting party in refusing to perform at all. See 6 Corbin on Contracts, § 1255.[3]

Since we have concluded that there is no evidentiary basis for the finding that Jinkner agreed to rebuild the pins, or to add to their usability or life beyond improving their appearance, Jinkner's failure to do so did not constitute a failure of performance and hence does not establish failure of consideration.

However, every workman who undertakes to repair the goods of another impliedly agrees to do so in a workmanlike manner even though such an agreement is not expressed.[4]

---

[3] "In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional." 1 Restatement, Contracts, § 274(1).

[4] *In Re Talbott's Estate* (1959), 184 Kan 501 (337 P2d 986);

It has been said that:

"In the usual contract to repair, the law implies an undertaking to perform the work in a reasonably skilled and workmanlike manner. But it does not follow that an artisan must answer in damages for anything which may later go wrong with an article or mechanism he has undertaken to repair. Liability can only be imposed upon him when it is shown that he used improper methods or defective materials or was otherwise guilty of a breach of his implied waranty." *Bellman Heating Co.* v. *Holland* (1952, Mun Ct App, DC), 86 A2d 526.

In our opinion this case should be remanded for determination by the trial judge whether Jinkner breached its implied agreement to refinish the pins in a workmanlike manner, and, since the defendants proceed on the theory of failure of consideration, whether any such breach was material and whether the performances promised by the parties were intended to be in exchange for each other.[5] We intimate no opinion thereon or as to the adequacy of the pleadings or evidence to support findings in that regard.

Reversed and remanded for further proceedings on the existing record, including the existing pleadings, not inconsistent with this opinion. Costs to appellant.

LESINSKI, C. J., and HOLBROOK, J., concurred.

---

*Armstrong* v. *Bangor Mill Supply Corp.* (1929), 128 Me 75 (145 A 741). See, also, 17A CJS, Contracts, § 329, p 292 *et seq.*

At the time of trial the defendants conceded that the burden was on them to prove "that the work was not done properly."

[5] Compare *Friedlander* v. *Gross* (1960), 63 NJ Super 470 (164 A2d 761); *K & G Construction Company* v. *Harris* (1960) 223 Md 305 (164 A2d 451). See 1 Restatement, Contracts, §§ 274, 275.