CITY OF MUSKEGON v DeVRIES

1. EMINENT DOMAIN—CONSTITUTIONAL LAW—TAKING FOR PUBLIC USE —JUST COMPENSATION—LOST RENTALS.

   Private property shall not be taken for public use without just compensation therefor being made, and lost rentals are part of that just compensation, provided the party considering himself aggrieved can establish a taking (Const 1963, art 10, § 2).

2. EMINENT DOMAIN—TAKING FOR PUBLIC USE—PUBLICATION OF PLANS—SALE OF PROPERTY—LEASING OF PROPERTY—URBAN RE-NEWAL.

   The promulgation and publicizing of plans does not constitute a taking of property even though such publicity hinders a sale of the property, and by logical extension the rule would similarly apply to the promulgation, publication and implementation of an urban renewal project which hinders the leasing of property.

3. EMINENT DOMAIN—REDUCTION OF VALUE—JUST COMPENSATION.

   A city may not by deliberate acts reduce the value of private property and thereby deprive the owner of just compensation.

4. EMINENT DOMAIN—CONDEMNATION—TAKING FOR PUBLIC USE— LOST RENTALS—BURDEN OF PROOF.

   Acts of a city which are alleged to have resulted in lost rentals for a landlord whose property was condemned for an urban renewal project must be shown by the party claiming to be aggrieved to have been *the* cause of the lost rentals in order to constitute a taking.

5. APPEAL AND ERROR—NONJURY TRIAL—FINDINGS OF FACT—COURT RULES.

   Findings of fact of a trial court sitting without a jury will not be disturbed unless clearly erroneous (GCR 1963, 517.1).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 7] 27 Am Jur 2d, Eminent Domain §§ 286, 351, 352, 431, 433.

[2, 6] 27 Am Jur 2d, Eminent Domain §§ 329, 339–343.

[3] 27 Am Jur 2d, Eminent Domain §§ 266, 271, 273–275.

[5] 5 Am Jur 2d, Appeal and Error §§ 839–845.

6. EMINENT DOMAIN—URBAN RENEWAL—TAKING FOR PUBLIC USE—
   OBLIGATIONS OF CITY.

   A city adopting an urban renewal project is under no obligation
   to provide a property owner with a timetable for the statutory
   taking of his property or to give any assurance which would
   allow the property owner to guarantee possession to a lessee for
   a period of years.

7. EMINENT DOMAIN—URBAN RENEWAL—TAKING FOR PUBLIC USE—
   JUST COMPENSATION—LOST RENTALS.

   A claim against a city for lost rentals because of an impending
   urban renewal project is too speculative to justify recovery
   where the property was vacant from its acquisition to the time
   of the adoption of the project, it was not in finished condition
   for occupancy by a tenant when the project was announced, it
   needed further remodeling to place it in such condition, and
   there was no specific evidence when any prospective lease
   would have become effective.

Appeal from Muskegon, James F. Schoener, J.
Submitted Division 3 January 8, 1975, at Grand
Rapids. (Docket Nos. 19207-19209.) Decided March
11, 1975. Leave to appeal denied, 394 Mich 787.

Petition by the City of Muskegon against Ber-
nard J. DeVries and Jean DeVries for condemna-
tion of defendants' property for an urban renewal
project. Counterclaim by defendants for additional
compensation for lost rentals. Judgment for plain-
tiff. Defendants appeal. Affirmed.

*O'Toole & Johnson,* for plaintiff.

*Parmenter, Forsythe & Rude* (by *John M.
Briggs, III),* for defendants.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS
and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Petitioner instituted con-
demnation proceedings against respondents. Re-
spondents countered with a counterclaim for rent-

als allegedly lost as a result of petitioner's adoption of an urban renewal project coupled with subsequent acts of misconduct. The counterclaim was denied as not proven and from such denial respondents appeal.

The record indicates that on October 8, 1968, the City of Muskegon, by ordinance, adopted an urban renewal project. It provided for the acquisition and demolition of numerous properties in downtown Muskegon including three parcels owned by respondents. Two of these were occupied store buildings leased by respondents prior to the project's adoption. The third was an unleased, unoccupied building described as parcel 13-3 and our sole concern on appeal.

On September 17, 1971, some 35 months and 9 days following the announcement of the project, petitioner commenced condemnation proceedings wherein it acquired title to all three of respondents' parcels. Thereafter respondents filed their counterclaim, the pertinent portions of which are paragraphs 6 through 9, hereinafter set forth as follows:

"6. That Petitioner City through its agents, servants and employees regularly represented to Respondents DeVries and their agents and to their prospective tenants and their agents that the subject property was about to be acquired and the improvements demolished and that prospective tenants should seek other quarters in order to avoid imminent displacement. Similar representations were periodically made through the news media.

"7. That based upon such representations, it was the duty of Petitioner to expeditiously proceed to acquire subject property by purchase or condemnation.

"8. That Petitioner did not expeditiously acquire subject property but unjustifiably delayed the known eventual acquisition for three years until on or about

September 17, 1971, and in the interim conducted other Urban Renewal activities in utter disregard of the rights of Respondents DeVries and knowingly prevented the rental of subject property.

"9. That the aforesaid conduct of Petitioner destroyed the marketability of rental space by deterring would be tenants, resulting in lost income to Respondents DeVries between October, 1968, and November, 1971, in the total sum of $30,000."

Following trial the trial judge, by written opinion, denied respondents' counterclaim as not proven.

"Respondent counterclaimed for a taking of the rental value of parcel 13.3 since he claims the City effectively prevented rental of that store building. The Court listened to the evidence produced by the respondent and cannot find that the City's activities or lack of activity constituted a taking upon which this Court can award compensation. The City's inaction and refusal to face up to the dilemma of respondent is revolting to this Court, but upon the evidence produced in Court I cannot find that these activities were the cause of a lost tenant. The counterclaim is therefore denied as not proven."

On appeal respondents claim reversal is required because: (1) Appellants' interest in lost rentals is a part of the "just compensation" required by Const 1963, art 10, § 2; (2) The adverse economic effect of the adoption and implementation of the Downtown Urban Renewal Project was a substantial cause of parcel 13-3 remaining vacant; (3) The City of Muskegon acted unreasonably by delaying the known eventual taking of parcel 13-3 and by other oppressive conduct.

MCLA 213.389; MSA 8.261 (29) provides in part as follows:

"Where a claim is made that the conduct of petitioner has resulted in *a taking* of property in the constitutional sense at a date earlier than the date of valuation set forth herein, such taking shall give rise to an action at law which may be prosecuted * * * in the circuit courts * * * ." (Emphasis supplied.)

Michigan Constitution 1963, art 10, § 2, provides:

"Private property shall not be *taken* for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." (Emphasis supplied.)

We agree, as did the trial court, that lost rentals are part of the "just compensation" required in Article 10, § 2, of the 1963 Michigan Constitution provided the party considering himself aggrieved can establish a taking.

The promulgation and publicizing of plans does not constitute a taking of property even though such publicity hinders a sale of the property. 29A CJS, Eminent Domain, § 135, p 537; *Holloway Citizens Committee v Genesee County,* 38 Mich App 317, 321; 196 NW2d 484, 486 (1972). Logically extended this rule would similarly apply to the promulgation, publication and implementation of an urban renewal project which hinders the leasing of property. Something more is required before a landlord has an enforceable claim against a condemning authority for lost rents.

The principle is firmly established in Michigan law that a city may not by deliberate acts reduce the value of private property and thereby deprive the owner of just compensation. *In re Urban Renewal, Elmwood Park,* 376 Mich 311, 317; 136 NW2d 896, 900 (1965). Therefore if a party seeking

recovery for lost rentals can show lost rentals resulting from wrongful or deliberate action or inaction on the part of the condemning authority, he can recover. While respondents claim it should be sufficient for recovery to show that the acts of the city were a *substantial* cause or *a* cause, we disagree. We hold, as did the trial judge, that to constitute a taking it must be shown to be *the* cause and that respondents herein have the burden of proof.

Lastly, respondents claim that the city acted unreasonably by delaying the known eventual taking of parcel 13-3 and by other oppressive conduct. While this would be sufficient to justify recovery, respondents still must prove that lost rents were caused by unreasonable delay and oppressive conduct. This is a question of fact to be determined by the trier of the facts; in this case the trial judge. This Court has repeatedly held that it will not substitute its judgment for that of the trial court sitting without a jury unless the findings of fact are clearly erroneous. GCR 1963, 517.1 as amended; *Jinkner v Town & Country Lanes, Inc,* 10 Mich App 596; 157 NW2d 317 (1968). Respondents' appeal is therefore reduced to the issue of whether the findings of the trial judge were clearly erroneous.

The allegation contained in paragraph 6 of respondents' counterclaim is clearly not supported by the evidence. The evidence shows only that respondents' agent contacted the city advising them of negotiations with prospective tenants stating they needed to know how long a possession they could guarantee. The city merely advised respondents' agent it did not know. The record is void of any evidence indicating the city knew otherwise. Under these circumstances the evidence

falls far short of proof of an allegation that the city advised respondents' agent and prospective lessees' agents that the property was about to be acquired and demolished and that such prospective tenants should look elsewhere to avoid imminent displacement.

Paragraph 7 alleges that because of the representations alleged in paragraph 6 the city had a duty to expeditiously proceed to acquire the subject property by purchase or condemnation. This likewise is not proven since the alleged representations were not in fact made.

Neither are respondents' allegations contained in paragraph 8 proven. While nearly a three-year delay was shown it was not established that such delay was unjustified nor that the city knowingly prevented the rental of parcel 13-3. In this vein it should be pointed out that the urban renewal plan was under attack in the courts and that the Michigan Court of Appeals did not rule on such issue until July of 1971. *Muskegon v Irwin,* 31 Mich App 263; 187 NW2d 481 (1971). Thereafter leave to appeal to the Supreme Court was denied. These proceedings were instituted on September 17, 1971.

Respondents' own expert testified that the sole cause of his failure to lease parcel 13-3 was his inability to guarantee possession for a minimum of five years. Respondents are bound by this testimony. We do not believe that a city adopting an urban renewal project is under any obligation to grant such assurance. To so hold would be tantamount to requiring any city which adopts such a project to delay the statutory taking of all property situated within the project area for a minimum of five years.

There is no evidence in the record supportive of

the proposition that the city knew the date of the eventual statutory taking. Under such circumstances we do not believe a city to be under any obligation to provide respondent with a timetable. If the table had been furnished to coincide with the statutory taking, respondents still could not guarantee a five-year lease since less than three years elapsed from announcement of the project to institution of these proceedings.

With respect to respondents' claim that the city undercut respondents' agent by negotiating leases with other displaced tenants within the project area, a review of the record does not indicate whether any such persons would have leased with respondents had they not rented from the city.

Respondents' parcel 13-3 was vacant from its acquisition to the time of adoption of the project; was not in finished condition for occupancy by a tenant when such project was announced; and needed further remodeling at a minimum cost of $8,000 to $10,000 to place it in such condition. Further, the evidence fails to disclose specifically when any prospective lease would have become effective. Under certain circumstances a claim for lost rentals is too speculative to justify recovery. *Foster v Detroit,* 405 F2d 138, 147 (CA 6, 1968). Such circumstances are present here.

Upon thorough review of the trial transcript, we cannot conclude that the findings of fact by the trial judge were clearly erroneous. Denial of respondents' counterclaim as not proven was proper.

Affirmed. A public question being involved, no costs are awarded.