IN THE MATTER OF ACQUISITION OF LAND—VIRGINIA PARK

GOLDBERG v CITY OF DETROIT

Docket No. 57215. Submitted July 14, 1982, at Detroit.—Decided November 4, 1982.

In 1979, defendant, City of Detroit, initiated eminent domain proceedings against various properties in the Virginia Park area of Detroit. Among those properties was a seven-story apartment building owned by plaintiff, Sol E. Goldberg. In 1980, plaintiff filed a complaint alleging that wrongful actions by the defendant had resulted in a de facto taking of his property. The two actions were consolidated for trial in the Wayne Circuit Court. The jury returned a verdict in favor of the plaintiff for $250,000 and the court entered a judgment thereon, David C. Vokes, J. Defendant appeals from that judgment and plaintiff cross-appeals from the trial court's refusal to award him actual attorney fees. On appeal, defendant contends that the trial court erred in denying its motion for a directed verdict in reference to the claim that a de facto taking occurred prior to 1979, in excluding from evidence a document filed by

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur 2d, Eminent Domain §§ 2, 7-9, 25, 26.
   27 Am Jur 2d, Eminent Domain § 266 et seq.
[2] 27 Am Jur 2d, Eminent Domain § 478 et seq.
[3] 26 Am Jur 2d, Eminent Domain § 157 et seq.
[4] 26 Am Jur 2d, Eminent Domain §§ 131, 152.
[5] 27 Am Jur 2d, Eminent Domain § 505.
[6] 4 Am Jur 2d, Appeal and Error § 110.
   5 Am Jur 2d, Appeal and Error § 849.
   27 Am Jur 2d, Eminent Domain § 468 et seq.
[7] 29 Am Jur 2d, Evidence § 662 et seq.
[8] 29 Am Jur 2d, Evidence §§ 695-697.
   Admissibility of pleading as evidence against pleader, on behalf of stranger to proceedings in which pleading was filed. 63 ALR2d 412.
[9] 5 Am Jur 2d, Appeal and Error § 800.
[10] 75 Am Jur 2d, Trial § 883 et seq.
[11] 5 Am Jur 2d, Appeal and Error § 713 et seq.
[12] 27 Am Jur 2d, Eminent Domain §§ 473, 476.

plaintiff's attorney in a federal court action brought by plaintiff against the Department of Housing and Urban Development, and in instructing the jury to return both a general verdict of compensation as of the date of the taking and a special verdict in regard to the date of the taking. *Held:*

1. The trial court did not err in denying the directed verdict motion. The proofs adduced at trial established a prima facie case that defendant's abuse of its powers in actions aimed at the subject property were a substantial cause of the decline in value of plaintiff's property.

2. The trial court erred in excluding the statement filed in the federal court action from evidence. This statement concerning the cause of the building's demise was an admission by a party opponent. However, the error in excluding the evidence was harmless since the excluded matter was cumulative evidence which merely proved what had been established already by plaintiff's testimony on cross-examination.

3. The trial court erred in instructing the jury to return a general verdict accompanied by special questions. However, a new trial was not granted since the defendant did not object to the jury instruction. Defendant was not prejudiced by this procedure and the special finding by the jury was consistent with the general verdict.

4. The jury's finding that the property had a value of $250,-000 in 1973 was within the fair range of the evidence.

5. The trial court correctly awarded plaintiff attorney fees of only $25 pursuant to the act regarding condemnation by state agencies and public corporations.

Affirmed.

1. Eminent Domain — Constitutional Law.

   Eminent domain is an inherent right of a state to condemn private property for public use; when exercising such power, the state, or those to whom the power has been lawfully delegated, must pay the owner just compensation (US Const, Am V; Const 1963, art 10, § 2).

2. Property — Inverse Condemnation.

   An inverse condemnation suit is one instituted by an owner of land whose property, while not having been formally taken for public use by a governmental defendant, has been damaged by a public improvement undertaking or other public activity.

3. Property — Eminent Domain — De Facto Taking.

   Actions of a governmental agency can constitute a "taking" of

private property, even though the agency did not directly exercise control over the property.

4. EMINENT DOMAIN — DE FACTO TAKING — INVERSE CONDEMNATION. The compensation awarded to a property owner in an eminent domain action is generally determined as of the time when the government takes the property, which is usually when a verdict is confirmed, the deed executed and the award paid; however, governmental actions can constitute a de facto taking or inverse condemnation prior to the time eminent domain proceedings are instituted.

5. EMINENT DOMAIN — INVERSE CONDEMNATION — BURDEN OF PROOF. The plaintiff in an inverse condemnation action has the burden of proving causation; the plaintiff may satisfy this burden by proving that the government's actions were a substantial cause of the decline of his property's value; the plaintiff must also establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.

6. APPEAL — DIRECTED VERDICTS — PRIMA FACIE CASE. An appellate court views the evidence in the light most favorable to the nonmoving party when reviewing a trial court's denial of a motion for a directed verdict and will affirm such denial where the evidence, when so viewed, establishes a prima facie case.

7. EVIDENCE — HEARSAY — ADMISSIONS — RULES OF EVIDENCE. A statement offered against a party-opponent in an action is not hearsay but rather is an admission by the party-opponent where the statement was made by a person who was authorized by the party-opponent to make such statement concerning the subject (MRE 801[d][2][c]).

8. EVIDENCE — ADMISSIONS — PLEADINGS. An admission contained in a pleading in one action may be received in evidence against the pleader on the trial of another action, even though the former action involved a stranger to the subsequent action; however, the statements in the pleading should be relevant and material to the issues involved in the action in which it is sought to be used, although it is not necessary that the offer should be limited to the parts of the pleading containing the admissions where the remainder is not prejudicial; it is not essential that both actions be at law or equity, in the same courts, in the same states or that the court in which the pleading was filed should have had jurisdiction of the action in which it was filed.

9. APPEAL — EVIDENCE — ADMISSIONS — HARMLESS ERROR.

> A trial court's erroneous exclusion of an admission by a party-opponent may be found to be harmless error where the excluded matter was cumulative evidence.

10. TRIAL — JURY INSTRUCTIONS — GENERAL VERDICTS — SPECIAL QUESTIONS — COURT RULES.

> A trial court is prohibited from instructing a jury to return a general verdict accompanied by special questions (GCR 1963, 514).

11. TRIAL — PRESERVING QUESTION.

> A defense counsel with an objection may not invite error by failing to state the objection at trial.

12. EMINENT DOMAIN — ATTORNEY FEES.

> The act regarding condemnation by state agencies and public corporations provides that a trial judge may order the payment by the petitioner to any respondent of an attorney fee not exceeding $25 (MCL 213.37; MSA 8.27).

*Friedman & Friedman, P.C. (by Robert Friedman),* and *Susan R. Kaufman,* of counsel, for plaintiff.

*Boris K. Yakima,* Special Counsel, for defendant.

Before: T. M. BURNS, P.J., and BEASLEY and C. W. SIMON,* JJ.

PER CURIAM. On March 16, 1981, in an inverse condemnation case, a Wayne County jury rendered a $250,000 verdict in favor of plaintiff, Sol E. Goldberg. From the judgment entered thereon, defendant, City of Detroit, appeals as of right. Plaintiff cross-appeals from the trial court's denial of actual attorney fees.

On March 21, 1979, defendant initiated eminent domain proceedings against various properties in the Virginia Park area of Detroit. Among these properties was a seven-story apartment building

---

* Circuit judge, sitting on the Court of Appeals by assignment.

owned by plaintiff. On June 27, 1980, plaintiff filed a complaint which alleged that defendant's wrongful actions resulted in a de facto taking of his property. These two actions were consolidated for trial on August 26, 1980.

Prior to trial, the parties stipulated as to the necessity of the defendant city's taking of the plaintiff's property for the benefit of the public; therefore, jury determination was limited to the date of the taking and just compensation for the condemned property.

The record reflects that defendant commenced an urban renewal project in the Virginia Park area in 1969. According to Otis Jenkins, an employee of defendant's community economic development department, the city planned, in order to eliminate the blight caused by the 1967 riot, to take all the properties within the project area except for Henry Ford Hospital, Herman Keifer Hospital and plaintiff's building. Jenkins testified that plaintiff's structure was not scheduled for taking because it was going to be rehabilitated.

In 1967, plaintiff purchased the seven-story building, which contained 10 commercial stores and 49 apartments, for $135,000. Plaintiff testified that members of defendant's relocation division informed his tenants on two occasions in 1973 that the city was planning on condemning the building. As a consequence of these incidents, plaintiff maintained that his tenants began to vacate. In the fall of 1975, the building was boarded up and, after several instances of vandalism, it was torn down in 1979. Plaintiff stated that the city deliberately acted in a manner to diminish the value of the property.

At trial, defendant denied that its employees encouraged plaintiff's tenants to vacate the build-

ing. Defendant agreed with plaintiff that the value of the property rapidly declined, but claimed that other causes were responsible for the decline.

On appeal, defendant raises three issues. First, it contends that the trial court erred in denying its motion for a directed verdict in reference to the claim that a de facto taking occurred prior to 1979. Among other things, defendant claims that plaintiff did not establish a causal connection between the city's actions and the property loss.

Eminent domain is an inherent right of a state to condemn private property for public use.[1] When exercising its power of eminent domain over the ownership or possession of privately owned property, the state, or those to whom the power has been lawfully delegated, must pay the owner just compensation.[2]

Where private property has been damaged rather than taken by governmental actions, the owner may be able to recover therefor by way of an inverse or reverse condemnation action.[3] An inverse condemnation suit is one instituted by an owner of land whose property, while not having been formally taken for public use, has been damaged by a public improvement undertaking or other public activity.[4] Inverse condemnation has been defined as:

"* * * a cause of action against a governmental

---

[1] *Trombley v Auditor General,* 23 Mich 471, 474; 9 Am Rep 94 (1871); *United States v Jones,* 109 US 513; 3 S Ct 346; 27 L Ed 1015 (1883).

[2] See US Const, Am V; Const 1963, art 10, § 2; *Thom v State Highway Comm'r,* 376 Mich 608, 613-614; 138 NW2d 322 (1965); 5A Thompson, Real Property (1957), § 2575, pp 627-637.

[3] Hagman, Urban Planning and Land Development Control Law, § 181, p 328.

[4] Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility,* 1966 Wis L Rev 3, 5.

defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."[5]

In *R J Widen Co v United States*,[6] a property owner filed a suit to obtain compensation for injuries to his property and business as a result of governmental actions involving a flood control project. The *Widen* court held that the actions of a governmental agency can constitute a "taking" of private property, even though the agency did not directly exercise control over the property:[7]

"Considered now against this background is plaintiff's contention that the destruction of its personal property and injury to its business as a result of the action of the government's contractor in March 1957 constituted a direct taking of its personal property for which just compensation is due. It is quite correct, as plaintiff indicates, that to constitute a taking under the Fifth Amendment it is not necessary that property be absolutely 'taken' in the narrow sense of that word to come within the protection of this constitutional provision; it is sufficient if the action by the government involves a direct interference with or disturbance of property rights. See, *e.g., Pumpelly v Green Bay Co,* 80 US (13 Wall) 166; 20 L Ed 557 (1871); *United States v Lynah,* 188 US 445; 23 S Ct 349; 47 L Ed 539 (1903); *United States v Cress,* 243 US 316; 37 S Ct 380; 61 L Ed 746 (1917). Nor need the government directly appropriate the title, possession or use of the properties in question since it is 'the deprivation of the former owner rather than the accretion of a right or interest to the sovereign [which] constitutes the taking. Governmental action short of acquisition of title or occupancy has been held,

---

[5] *Thornburg v Port of Portland,* 233 Or 178, 180, fn 1; 376 P2d 100 (1962).

[6] 357 F2d 988 (Ct Cl, 1966).

[7] 357 F2d 993.

if its effects are so complete as to deprive the owner of all or most of his interest in the subjet matter to amount to a taking.' *United States v General Motors Corp,* 323 US 373, 378; 65 S Ct 357, 359-360; 89 L Ed 311, 318 (1945). For example, it has been held consistently that an overflow of water resulting from government construction projects which materially impairs the use and enjoyment of lands constitutes a constitutional taking of such lands despite the absence of appropriation of title or occupancy. *Pumpelly v Green Bay Co, supra; United States v Lynah, supra; United States v Cress, supra."*

In the within case, plaintiff's inverse condemnation action was based on direct actions taken by the city from 1969 to 1973, which allegedly substantially deprived him of his use of the subject property, thereby lessening its value. He claimed that defendant excluded the subject property from its Virginia Park urban renewal project with the intention of formally taking the property at a subsequent date and at a lesser value.

In general, the compensation awarded to a property owner is determined as of the time when the government takes, which is usually "when a verdict is confirmed, the deed executed, and the award paid".[8] However, governmental actions can constitute a de facto taking or inverse condemnation prior to the time eminent domain proceedings are instituted.[9] Since no exact formula exists concerning a de facto taking, the form, intensity, and the deliberateness of the governmental actions toward the injured party's property must be examined.[10] We discussed the plaintiff's burden of proof in *Heinrich v Detroit:*[11]

[8] *Detroit Bd of Ed v Clarke,* 89 Mich App 504, 508; 280 NW2d 574 (1979).

[9] *Clarke, supra,* p 508; *Foster v Detroit,* 254 F Supp 655, 662-663 (ED Mich, 1966).

[10] *Heinrich v Detroit,* 90 Mich App 692, 698; 282 NW2d 448 (1979), *lv den* 409 Mich 858 (1980).

[11] *Heinrich v Detroit, supra,* p 700.

"As for the plaintiff's burden of proof in inverse condemnation actions, we would agree with the opinion in *Muskegon v DeVries,* 59 Mich App 415; 229 NW2d 479 (1975), *lv den* 394 Mich 787 (1975), insofar as it holds that the plaintiff has the burden of proving causation. However, a plaintiff may satisfy this burden by proving that the government's actions were a *substantial* cause of the decline of his property's value. It also appears that the plaintiff must establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. *Sayre v Cleveland,* 493 F2d 64 (CA 6, 1974); *Madison Realty Co v Detroit,* 315 F Supp 367 (ED Mich, 1970). *Holloway Citizens Committee of Lapeer & Genesee Counties, Inc v Genesee County,* 38 Mich App 317, 320; 196 NW2d 484 (1972)." (Emphasis in original.)

In reviewing a trial court's denial of a motion for a directed verdict, an appellate court views the evidence in the light most favorable to the non-moving party. If the evidence, when so viewed, establishes a prima facie case, then the motion for a directed verdict should be denied.[12]

Under this standard, we hold that the trial court did not err in denying the directed verdict motion. Plaintiff presented evidence that (1) his tenants vacated their apartments shortly after the improper contacts by defendant's employees, and (2) the city's decision not to include the subject property in the Virginia Park project may have been the result of an effort to reduce the value of the property. We conclude that the proofs adduced at trial established a prima facie case that defendant's abuse of its powers in actions aimed at the subject property were a substantial cause of the decline in value.

[12] *Detroit & M R Co v Van Steinburg,* 17 Mich 99, 117 (1868); *Dodd v Secretary of State,* 390 Mich 606, 612; 213 NW2d 109 (1973); 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 529-530.

Defendant further claims that the trial court erred in excluding from evidence a document which was filed by plaintiff's attorney in a federal court action. In the federal action, plaintiff sued the Department of Housing and Urban Development for breach of contract regarding a loan commitment. The proffered exhibit was entitled "Proposed Findings of Fact and Conclusions of Law and Trial Brief" and contained in pertinent part:

"5. The building died as a result of HUD's dual breach of its contract. But for HUD's failure to furnish a proper, timely appraisal, this building could have been rehabilitated."

Plaintiff objected to the proffered document on relevancy grounds. The basis for the trial judge's exclusion of the proposed exhibit is unclear. Defendant asserts that the above quoted passage is relevant, since it contradicts plaintiff's position at trial that the city's actions and inactions were the cause of the decline of the subject property's value.

We find that the trial court erred in excluding the statement from evidence. Under MRE 801(d)(2)(c), the statement concerning the cause of the building's demise was an admission by a party-opponent. The general rule pertaining to the introduction of pleadings from independent lawsuits as admissions of party-opponents is delineated in 31A CJS, Evidence, § 303, pp 778-780:[13]

"It is well established that an admission contained in a pleading in one action may be received in evidence against the pleader on the trial of another action, even though the former action involved a stranger to the subsequent one. The rule in this respect is the same

---

[13] See, also, *Krajewski v Western & Southern Life Ins Co,* 241 Mich 396, 400-401; 217 NW 62 (1928); McCormick, Evidence (2d ed), § 265, pp 635-636.

whether the actions are both at law, both in equity, or one in equity and the other at law. It is not essential that both actions should be in the same court, but admissions made in the pleadings filed in a federal court are competent in a state court, and vice versa; and a pleading filed in another action is not rendered inadmissible by the fact that such.action was brought in a state other than that in which it is sought to use the pleading as evidence. Indeed it is not even necessary that the court in which the pleading was filed should have had jurisdiction of the action in which it was filed.

"It is, however, essential that the statements in the pleading should be relevant and material to the issues involved in the action in which it is sought to be used, although it is not necessary that the offer should be limited to the parts of the pleading containing the admissions, where the remainder is not prejudicial." (Footnotes omitted.)

In *Ledger v Northwestern Mutual Life Ins Co,*[14] a wife's bill for divorce which was filed several years subsequent to her husband's disappearance was held to be admissible against her in her action on his life insurance policy on the basis that the prior pleading may be considered as an admission that she then believed him to be alive.

Previous to the ruling on the proffered document, plaintiff testified on cross-examination in reference to the federal court action:

"*Q. [Mr. Serowik, defense counsel]:* In 1976, February, did you believe that the building could be rehabilitated?

"*A. [plaintiff]:* I was still hoping upon hope that it could be, and I was fighting with HUD to try and get them to go ahead with the commitment that they had made.

"I really believed at that point in time that the building could be rehabilitated.

[14] 258 Mich 26, 30-31; 241 NW 803 (1932).

"*Q.* As you indicated earlier, the City of Detroit was doing everything in their power to help you secure that financing from HUD?

"*A.* One department of the City of Detroit was helping.

"*Q.* Certainly, the Police Department doesn't secure loans for individuals, nor does the Fire Department? There is one department in the City of Detroit that does that?

"*A.* C.E.D.D.

"*Q.* Correct. But in February, you thought the building could be rehabilitated?

"*A.* I was still fighting to rehabiliate, to correct my investment.

"*Q.* Did you think that HUD, the Housing and Urban Development, had done anything intentional or willfully to prevent you from getting the loan to rehabilitate the building?

"*A.* Sir, that was the nature of the lawsuit in the federal court, and when I sued the Department of Housing and Urban Development for breaching that contract, a wrongful breach of contract, and a federal judge trying the case said that I was right.

"*Q.* So, if the loan would have come through, the building would have been rehabilitated, is that correct?

"*A.* Yes, it would have been.

"*Q.* Is that what you stated in a letter, also in your pleadings in federal court?

"*A.* I was sufficiently naive to believe that it could still be rehabilitated.

"*Q.* But you did file in your federal lawsuit, pleadings that said 'but for the act of HUD, the building would have been rehabilitated,' is that correct, yes or no?

"*A.* In 1975?

"*Q.* Yes.

"*A.* Yes.

"*Q.* Thank you. Did you think, or did you state, or in any way manifest this thought that HUD, in relation to this rehabilitation loan, did something willfully? You did say that, is that correct?

"*A.* It was my feeling that certain people working in

HUD set about to destroy the practicality of the loan and they were successful in so doing."

Despite the trial court's erroneous exclusion of the statement contained in the federal court pleadings, we find the error to be harmless, for the excluded matter was cumulative evidence.[15] The federal court pleadings merely proved what had been established already by plaintiff's testimony on cross-examination.

Lastly, defendant argues that the jury verdict must be vacated because the jury was instructed to return both a general verdict of compensation as of the date of taking and a special verdict in regard to the date of taking.

The trial judge herein charged the jury in relation to the form of the verdict:

"In order to properly determine this matter, the first thing you must do is determine the date of taking. That is your first job, when you retire to that jury room.

"When you have determined the date of taking, then the next duty will be to determine the amount of your verdict, and your verdict must be within the range that I gave you, depending on the year of the date of taking."

GCR 1963, 514 prohibits the use of a general verdict accompanied by special questions. This court rule superseded former Rule 37, § 6 (1945), which authorized the return of general verdicts supplemented by special questions. In 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 503, the authors analyzed the intention of GCR 1963, 514:

---

[15] See *Antosik v Michigan Alkali Co,* 166 Mich 415, 420; 132 NW 80 (1911); *Paul v De Carrie,* 196 Mich 434, 443; 163 NW 67 (1917); 2 Michigan Law & Practice, Appeal, § 415, pp 309, 311-312; 5 Am Jur 2d, Appeal & Error, § 800, pp 241-242.

"The practice of general verdicts with special questions, as a matter of right, involved some difficulties which, apparently, the new rules sought to obviate. The most serious difficulty was that of possible discrepancy between the general verdict and the answers to special questions, which would necessitate a new trial. Rule 514 reflects an apparent assumption that the advantages of special questions can be preserved, without the hazards of inconsistency with a general verdict, by using special verdicts. See the opinion of Justice TALBOT SMITH in *Sahr v Bierd,* 354 Mich 353; 92 NW2d 467 (1958)."

It is noteworthy that neither party objected to the jury instructions regarding the form of the verdict.

Unlike the factual setting in *In re Medical Center Rehabiliation Project,*[16] the verdicts herein are not inconsistent, as the jury found the date of taking to have occurred in 1973, as claimed by plaintiff, and rendered a general verdict as to the value on that date of $250,000.

Plaintiff's expert witness, Thomas Walsh, testified that the property had a $269,000 value in 1973. William Miller, who testified on behalf of defendant, appraised the property at $126,500 in 1973. Evidence was also presented which displayed that the value of the property in 1979 was between $48,850 and $81,000. Accordingly, the jury's finding that the property had a $250,000 value in 1973 was within the fair range of the evidence.[17]

Inasmuch as defendant did not object to the jury's returning a verdict accompanied by a specific question related to the date of taking, we decline to grant a new trial. Defendant was not

---

[16] 50 Mich App 164; 212 NW2d 780 (1973).

[17] See *Detroit v Yellen,* 28 Mich App 529, 533; 184 NW2d 563 (1970); *Dep't of Conservation v Connor,* 316 Mich 565, 583; 25 NW2d 619 (1947).

prejudiced by this procedure, and the special finding of the jury was consistent with the general verdict. "Fairness demands that a defense counsel with an objection not invite error by failing to state the objection."[18]

On cross-appeal, plaintiff maintains that the trial court erred in refusing to award him actual attorney fees. Plaintiff relies on the uniform relocation assistance act,[19] Michigan's relocation assistance act,[20] and the Uniform Condemnation Procedures Act.[21] Having examined these statutes, we find that the trial court correctly awarded plaintiff attorney fees of $25 pursuant to MCL 213.37; MSA 8.27.

Affirmed.

---

[18] *People v Maynard,* 108 Mich App 56, 59; 310 NW2d 273 (1981).

[19] 42 USC 4601 *et seq.*

[20] MCL 213.321 *et seq.;* MSA 8.215(61) *et seq.*

[21] MCL 213.51 *et seq.;* MSA 8.265(1) *et seq.*