STANDARD INDUSTRIES, INC v DEPARTMENT OF
TRANSPORTATION

Docket No. 108521. Submitted January 4, 1990, at Lansing. Decided
April 2, 1990.

The Michigan Department of Transportation announced in Sep-
tember, 1966, that it was considering building a highway in
Oakland County. The proposed route traversed property owned
by Standard Industries, Inc. The United States Department of
Transportation approved advanced acquisition of Standard's
property in September, 1973. In August, 1976, Standard signed
an agreement granting the Michigan Department of Transpor-
tation an option to purchase. In January, 1977, the project was
cancelled and the department notified Standard that it was no
longer interested in purchasing the land. Standard then
brought an action in the Court of Claims against the Michigan
Department of Transportation alleging that the defendant's
actions constituted a temporary de facto taking of its land. The
trial court, Thomas L. Brown, J., found that the delay in the
acquisition process was not unreasonable or deliberate and was
not the fault of the defendant. The court determined that
plaintiff was not entitled to compensation and entered a judg-
ment of no cause of action. Standard appealed.

The Court of Appeals *held:*

1. The promulgation and publication of plans alone do not
constitute a taking. There must be some action, such as unrea-
sonable delay or oppressive conduct directed to the neighbor-
hood as a whole. The question of what is unreasonable is for
the trier of fact.

2. The trial court's findings that defendant did not deliber-
ately or unreasonably stall the project were not clearly errone-
ous.

Affirmed.

REFERENCES

Am Jur 2d, Eminent Domain §§ 157, 158.

Supreme Court's views as to what constitutes "taking," within
meaning of Fifth Amendment's prohibition against taking of
private property for public use without just compensation. 57 L
Ed 2d 1254.

1. EMINENT DOMAIN — CONDEMNATION — DE FACTO TAKING.

Private property may not be taken for public use without due process of law and just compensation; a taking occurs once a verdict is confirmed, the deed executed, and the award paid; however, governmental actions may amount to a de facto taking prior to an actual eminent domain proceeding.

2. EMINENT DOMAIN — CONDEMNATION — TAKING.

A taking of private property for public use does not require an actual physical invasion; a diminution in value or partial destruction may constitute a taking.

3. EMINENT DOMAIN — CONDEMNATION — TAKING.

Mere promulgation and publication of plans is insufficient to constitute a taking of private property for public use; there must be some action such as unreasonable delay or oppressive conduct directed to the neighborhood as a whole; the question of what is unreasonable is for the trier of fact.

*Bert Burgoyne, P.C.* (by *Bert Burgoyne*), and *Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *David W. Berry* and *Mary Ray Brophy*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Ronald F. Rose,* Assistant Attorney General, and *Thomas D. Stone,* Special Assistant Attorney General, for defendant.

Before: MARILYN KELLY, P.J., and GILLIS and MACKENZIE, JJ.

MARILYN KELLY, P.J. This case involves a claimed de facto taking of plaintiff's land. After a bench trial, the lower court rendered a judgment of no cause of action. Plaintiff appeals as of right. We affirm.

Plaintiff owns a 140-acre parcel of land in Oakland County. In 1959, it began preparing the land for development, planning to build a golf course, shopping mall, apartments, and commercial buildings.

In September, 1966, defendant announced at a public hearing that it was considering building a highway in the area to be called M-275. Plaintiff learned that the proposed route of M-275 would traverse its property. The exact location could not be determined until further tests were performed.

From 1966 to 1977, the only additional efforts plaintiff made to improve the property were to attempt to rezone it and to seek permits for a sewage treatment facility. In 1968, plaintiff began working with defendant to speed up the highway project as it affected its land. Defendant conducted surveys and tests. In 1973, plaintiff learned the exact projected location of the highway and began negotiations concerning transfer of the land.

The United States Department of Transportation approved advanced acquisition of plaintiff's property in September, 1973. The appraisal was delayed because of its complexity, caused partly by soil problems necessitating additional surveys. Defendant received final appraisal reports in February, 1976.

On August 18, 1976, plaintiff signed an agreement granting defendant an option to purchase a right-of-way and a landlocked portion of its property for $896,500. Then, in January, 1977, the M-275 project was cancelled. Defendant notified plaintiff that it was no longer interested in purchasing.

On May 12, 1978, plaintiff sued alleging that defendant's actions constituted a temporary de facto taking of its land. It claimed that because of the delay it incurred significantly increased development costs. In 1987, after a five-day trial, the court concluded that plaintiff had failed to prove that defendant had deliberately delayed the acquisition process. The long delay was due, in part, to additional requirements imposed by the federal

government. For that reason, plaintiff was not entitled to compensation.

Plaintiff moved for a new trial. It claimed that a recent United States Supreme Court decision, which awarded compensation for a temporary regulatory taking, mandated a decision in its favor. *First English Evangelical Lutheran Church of Glendale v Los Angeles Co,* 482 US 304; 107 S Ct 2378; 96 L Ed 2d 250 (1987). The court denied plaintiff's motion.

On appeal, plaintiff urges the trial court erred in holding that, to prevail, plaintiff had to prove bad faith or deliberate action by defendant. It maintains that proof of government action which results in a deprivation of reasonable economic use of property is all that is required. We disagree.

In *First English* the Supreme Court held the property owner must be paid when a land-use regulation amounts to a taking of all use of the property. The Just Compensation Clause of the Fifth Amendment requires payment to the owner even where the intrusion was only temporary. However, the Court expressly limited its holding in that case, stating:

> We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us. We realize that even our present holding will undoubtedly lessen to some extent the freedom and flexibility of land-use planners and governing bodies of municipal corporations when enacting land-use regulations. [*First English, supra,* p 321.]

The Supreme Court assumed, for the purposes of its decision, that the ordinance denied the plaintiff

all use of its property. We also note that the regulation in *First English* was a deliberate action intended to stop the plaintiff's use of its land. The court was not required to decide if there was a taking, only whether compensation is available for a temporary taking.

It is well established that private property may not be taken for public use without due process of law and just compensation. *Thom v State Highway Comm'r,* 376 Mich 608, 613; 138 NW2d 322 (1965). A taking is said to have occurred once a verdict is confirmed, the deed executed, and the award paid. However, in certain situations governmental actions may amount to a de facto taking prior to an actual eminent domain proceeding. *Foster v Detroit,* 254 F Supp 655, 662 (ED Mich, 1966).

A taking does not require an actual physical invasion. It may occur through a diminution in value or partial destruction. *Detroit Bd of Ed v Clarke,* 89 Mich App 504, 508; 280 NW2d 574 (1979). The promulgation and publication of plans alone do not constitute a taking, even though resultant publicity hinders a property's sale. *Muskegon v DeVries,* 59 Mich App 415, 419; 229 NW2d 479 (1975). There must be some action, such as unreasonable delay or oppressive conduct directed to the neighborhood as a whole. *Detroit Bd of Ed, supra,* p 509. The question of what is unreasonable is for the trier of fact. *Muskegon, supra,* p 420.

In this case, the trial court found the delay was not unreasonable or deliberate in that it was not the fault of defendant. Defendant was diligent in attempting to move the procedure along. The delay was caused by numerous factors including refusal by federal authorities to accept defendant's environmental impact statement. There were also problems in acquiring replacement recreational

land. Additional surveys and soil testing caused further delay.

The trial court's findings were not clearly erroneous. MCR 2.613. While the proposed highway created a cloud over plaintiff's property, we cannot conclude that the defendant deliberately or unreasonably stalled the project.

Affirmed.